## JAS. HUNTER v. STATE.

No. A-998.    Opinion Filed December 14, 1911.

(119 Pac. 445.)

1.  **EVIDENCE—Judicial Notice.** The courts of this state take judicial notice of the fact that the Kiowa Indian agency is adjacent to the city of Anadarko, where it has been established for many years by the United States government. They also take judicial notice of the fact that Anadarko is the county seat of Caddo county, Okla.

2.  **RAPE—Age- of Prosecuting Witness—Evidence.** In prosecutions for statutory rape, the age of the complaining witness is always a question of fact for the jury, to be determined by them from all the evidence in the case; and, when the prosecuting witness appears on the witness stand before them, they may consider her apparent age in determining this question.

3.  **APPEAL AND ERROR—Review—Harmless Error—Verdict.** If error has been committed by the conviction of a defendant for statutory rape in the second degree, when under the evidence he should have been convicted of statutory rape in the first degree, the defendant cannot be heard to complain because the error was clearly to his advantage. The law never considers a question of error except in behalf of those who are injured thereby.

(Syllabus by the Court.)

*Appeal from District Court, Caddo County; Frank M. Bailey, Judge.*

Joseph Hunter was convicted of crime, and appeals. Affirmed.

Appellant was prosecuted by information in the district court of Caddo county for the offense of statutory rape in the first de-

gree, and was by the jury found guilty of rape in the second degree. His punishment was assessed at imprisonment in the penitentiary for five years.

*W. R. Haynes,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J.  It is contended by counsel for appellant that venue was not proven in this case.  It is true that no witness testified in direct language that the crime charged was committed in Caddo county, Okla.  Cahoto, the mother of the prosecuting witness, testified that her home was at Apache, Caddo county, and that she and her husband and the prosecuting witness had been on a visit to the Cheyenne Indians some time in the fall previous to the commission of this offense.  Her testimony on this subject is as follows:

"Q. Did you go on a visit up to the Cheyenne Indians some time last fall?  A. Yes, sir; we came back by here.  Q. Did you stop at Anadarko as you came back?  A. Yes; at Joe Hunter's camp.  Q. Who of your people were with you when you camped over there?  A. My folks and Joe's folks.  Q. Who of your people were with you?  A. We stayed by ourselves.  Q. Was Ellen with you at that time?  A. Ellen Mul-ke-hay was with us, and I saw them take her down to the river..  Q. Was your husband with you over there?  A. Yes; he was there."

Chall-e-sin testified that the prosecuting witness was his step-daughter.  He then proceeded to testify as follows:

"Q. Did you and your wife and Ellen go up to visit the Cheyennes any time last fall?  A. Yes.  Q. As you came back home, did you camp over here at old town in Anadarko?  A. Yes; where Joe Hunter was camped.  Q. Did you see Joe and Emma Hunter the day you camped there?  A. Yes, sir.  Q. Did they go out to gather any weeds while they were camped there?  A. Emma told the girl to come and go with her when she went to get some weeds.  Q. Where was Joe Hunter at that time, if you know?  A. Joe was down at his camp.  Q. How long was Emma gone at that time, Emma and Ellen?  A. They got back about 7:30."

The prosecuting witness testified that while she was on this trip, the offense was committed upon her by appellant.  It is use-

less to.repeat the revolting details given in evidence. It was further proven that some ten days or two weeks after the alleged offense the prosecuting witness was taken to the Kiowa Indian agency to be examined by the physician in charge of the agency on account of the injuries alleged to have been received by her at the time of the commission of this offense.

Courts of the state take judicial notice of the fact that the Kiowa Indian agency is adjacent to the city of Anadarko, in Caddo county, where it has been established many years by the United States government. They also take judicial notice of the fact that Anadarko is the county seat of Caddo county, Okla. Courts take judicial notice of the boundaries of the state and the counties in the state, and also of the geographical positions and location of cities and towns within their jurisdiction. See *Brunson v. State*, 4 Okla. Cr. 467, 111 Pac. 988; *Fuller v. Territory*, 2 Okla. Cr. 86, 99 Pac. 1098; *Reed v. Territory*, 1 Okla. Cr. 492, 98 Pac. 583, 129 Am. St. Rep. 861.

The effect of Cahoto's testimony was that, when she returned from her visit to the Cheyenne Indians, she stopped at Anadarko at Joe Hunter's camp. Chall-e-sin testified that, when they came back from their visit to the Cheyenne Indians, they camped at old town in Anadarko where Joe Hunter was camped. The girl testified that this was the time and place when the offense was committed upon her. We think this sufficiently establishes the venue of the case.

The evidence shows that the prosecuting witness, Ellen Mulke-hay, was an Apache Indian girl. There was evidence to the effect that she was about 13 years old at the time of the commission of this offense. It is contended upon the part of counsel that, if she was under the age of 14 years, the offense committed was rape in the first degree, and that, as appellant was convicted by the jury for rape in the second degree, a valid judgment cannot be rendered against him thereon. The age of the prosecuting witness in cases of this sort is always a question of fact, to be determined by the jury from all the evidence in the case, and they may consider her apparent age when she appears upon the

witness stand before them. We think that, if error was committed in this matter, appellant cannot be heard to complain, as it was clearly to his advantage. For a discussion of this question and citation of authorities, see *Coleman v. State, infra,* 118 Pac. 594.

We deem it due to counsel who represents appellant in this court to state that he did not represent appellant in the trial of this case in the district court. We have examined carefully the various questions which have been discussed in the brief of counsel for appellant and in his oral argument, but as no exceptions were taken to the rulings of the trial court, and as we cannot say from an inspection of the record that appellant suffered any material injury therefrom, it is not necessary for us to discuss any of these questions. If appellant was not properly represented in the trial court, that is his misfortune. If this was a ground for a new trial, defendants would employ none except the most incompetent counsel. We cannot grant a new trial upon this ground alone where appellant was represented by counsel of his own choice.

The prosecuting witness, her mother, and stepfather were all Apache Indians, and could not understand or speak the English language, and had to be examined and gave their testimony in court through an interpreter. It is true that their language was broken and their modes of expression were at times difficult to understand, but, taking their testimony as a whole, we think that it sufficiently established the offense. In addition to their testimony, W. C. Morrison, deputy sheriff, testified that he overheard a conversation between appellant and his brother in which appellant said to his brother: "God damn it, I done it, and they cannot prove it." This was after the arrest of appellant and while he was in jail pending trial on this charge. As appellant was then in jail on this charge, the inference is natural that he referred to the crime for which he was being held. This inference is strengthened by the fact that although appellant took the stand as a witness in his own behalf, after having heard the damaging statement of the deputy sheriff, appellant did not at-

tempt either to deny or explain it, and made no attempt to sum-mon his brother, who heard the statement, to testify in his be-half concerning the matter. Taking the evidence altogether, we have no sort of doubt of appellant's guilt. It is true that the prosecuting witness is only a poor Apache Indian girl, yet she is as much entitled to the protection of the law as any girl in the state. The rich and influential can take care of themselves. It is the poor, the weak, the humble, and the ignorant who need the strong arm of the law for their protection. Her very weakness and helplessness should appeal strongly to the law for her de-fense. The testimony of this little daughter of the plains is enough to touch a heart of stone. When asked her name, she re-plied "Florence." She testified that Ellen Mul-ke-hay was dead.

The record then proceeds as follows:

"Q. Do you go by the name of Ellen Mul-ke-hay or Flor-ence? A. I got a new name. They call me Florence. Q. How long have you gone by the name of Florence? A. Since Septem-ber when I started to school. The lady teacher gave me that name then. Q. Have you ever had a name before Florence? A. No. Q. How long have you had the name Florence? What was your name before the teacher called you Florence? A. Didn't they give me the name Florence? Q. What name did you go by before they called you Florence? What did they call you before they called you Florence? A. The teacher just called me the one name, Florence. Q. How long has it been since they have been calling you Florence? How long have you been going to school? A. I went to school four days. Q. How long did you go to school in all, when did you first start to school? A. I had not been to school any at that time. Q. Didn't you go. to school before this happened? A. Yes; when this happened. I went to school."

There is a pathetic side to this Indian question. This was their country. God gave it to them. It has been taken from them by the ruthless hand of power. They have been crushed as with an iron heel by the pitiless and inexorable march of civil-ization. The least we can do is to protect them and help them as far as possible to adapt themselves to conditions which have been forced upon them much against their will. If we desire

to convince them that our civilization is better than their previous mode of life, we must prove it by acts rather than by words. Here was a poor little Apache girl on the soil of her fathers, surrounded by aliens, unable to understand or speak a single word of their language, and in her helplessness appealing to them and to their law for protection.

We think that the evidence fully sustains the verdict. The only thing strange about it is that the jury did not convict appellant of rape in the first degree, and assess his punishment at the full limit of the law, which, if they had done, we would have cheerfully sustained.

We find no error in the record. The judgment of the lower court is therefore in all things affirmed.

ARMSTRONG and DOYLE, JJ., concur.