JIM JOHNSON v. STATE.

No. A-9219.   Sept. 17, 1937.
(71 Pac. 2d 786.)

S. R. Harper, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. Jim Johnson, the plaintiff in error, the defendant in the trial court, was by information charged with the larceny of one bay mare and one black horse, the property of M. P. Witcher. The larceny is alleged to have taken place on the 27th day of June, 1934, in Garvin county. Defendant was tried, convicted, and sentenced to serve a term of five years in the state penitentiary, at McAlester. The record was properly saved, and the defendant by petition in error with case-made attached has appealed.

M. P. Witcher, testifying on behalf of the state, stated he lives about two and three-fourth miles north of Pernell, in Garvin county, Okla.; that he owned several head of stock; that on the 27th day of June, 1934, a mare and two year old colt disappeared from his pasture:

"I tracked her north of farmer Bailey's and lost her trail. The next morning I struck her tracks again where she had been carried through the gate in the old Prince field north of Bailey's; she had been fresh shod and I could see her tracks right in the gate where she went through. I kept looking for the mare and colt but could not find them. I had a talk with the defendant about

the mare and colt being missing, and stated if they would put my stuff back on the ground floor I would quit but if they didn't I was going the limit, and he said he would try to put her back; later on I saw him in Lawton and he wanted to settle with me and pay me off; he did not make any particular offer as to the amount he was willing to pay, just wanted to pay me off and quit. This was before I had sworn out the warrant."

The defendant in the conversation did not say he had taken the mare but he would try to get her back.

"I discussed with him the question that I had information he had taken the mare and colt. At the time the mare and colt were taken Jim Johnson lived right north of Ernest Bowman's place, in Garvin county, Oklahoma. After I had sworn out the warrant he sent word to me and I met him in Duncan, and he wanted to settle with me and me quit the prosecution for the horses it was alleged he had stolen; John Winters brought the word to me to meet defendant in Duncan, and I met him at the court house. I told him I could not afford to take pay from him after I had started the prosecution. I do not know who took the mare out of the pasture but some one was bound to have done so because she went out through the field gate. I live better than two miles from Jim Johnson. I cannot tell you how long he had been there at the time the horses were taken; I gave no one any authority to take the mare and colt out of the pasture, they were taken without my knowledge or consent and against my will."

Ernest Bowman, testifying on behalf of the state, stated:

"I live at Foster, Oklahoma; have known the defendant Jim Johnson for 13 years; I remember the occasion of June 27, 1934, on which Mr. Witcher lost some stock."

At this point the witness stated:

"I will ask the request for my constitutional rights. Q. You don't mean to answer then? The Court: Does it

incriminate you if you answer the question? That is what I mean? A. Yes, sir: if I told you what I know about the case. Shall I tell? Mr. Bowie: Yes, sir, I would like for you to. The Court: Well, sustained, if he makes the demand. Mr. Bowie: Well, do you answer or insist on your constitutional rights? The Court: I don't think you can. Mr. Harper: I don't think you can inquire into that. Mr. Bowie: The only thing you want is immunity? A. I do. The Court: Now, just the immunity that you don't prosecute against him? You offer that immunity? Mr. Bowie: I do. The Court: All right. Mr. Harper: We except to the ruling of the court."

The witness then stated:

"Joe Bailey and Jim Johnson brought this mare and colt to my house; they said it was Mr. Witcher's mare and colt. They woke me up between nine and ten o'clock at night and asked me to rope the colt for them; there was no one at the house except myself, wife and babies; I knew the Witcher mare but that was the first time I had seen the colt. After I roped the colt the defendant Johnson decided he could not haul both of them and wanted me to ride the mare toward Marlow and he would come back and meet me. He was supposed to give me $5.00 for making the trip but he did not pay me anything. When he met me he loaded the mare, and we drove on two or three miles and he told me I would have to be good, it was two against one. The two he referred to was he and Joe Bailey. Joe Bailey died since that time, I don't know the date, he was killed in the south side of this county by the officers."

On cross-examination witness stated he lived in Garvin county; that the defendant and Joe Bailey came to his house with the mare and colt:

"At the time the mare and colt was taken I guess I lived about a quarter of a mile from Jim Johnson. I had gone to bed, Joe Bailey woke me up; they led the mare out in front of the yard and tied her something like

fifteen steps from the porch of my house. The defendant stated he had traded for the mare and colt off of Joe Bailey. I roped the colt, and defendant decided he could not haul both of them and wanted me to ride the mare and he would come back and meet me; when he overtook me he said 'This is a good place to catch a car'; after we loaded up he told me the mare and colt were stolen and I would have to be good. I have served a term in the penitentiary; was released the 13th day of November; I do not want to go back to the penitentiary. The reason I went the first time was on account of Jim Johnson; he talked me into the notion of stealing some mortgaged property."

Myrtle Bowman, the wife of Ernest Bowman, stated she was 28 years of age and lived three miles east of Foster:

"I know the defendant Jim Johnson; on the 27th day of June, 1934, Jim Johnson and Joe Bailey came over to our house; they said they had a mare and colt, said it was Witcher's; they wanted my husband to rope the colt, and he roped the colt for them; after he roped the colt they decided they could not carry both in the car and wanted my husband to ride the mare off; he did; I think it was some time between nine and ten o'clock at night; Mr. Johnson said he would give my husband $5.00 to ride the mare."

On cross-examination witness said they had been asleep when Johnson and Bailey came:

"I did not get up; they led them up close to the yard gate; I could not swear what color the mare and colt was, just heard them say it was a mare and colt. My husband got back the next evening."

Ernest Bowman, recalled for further direct examination, stated:

"I went about six miles from my place; got back home the next day about two or three o'clock; after load-

ing the mare up in the truck I got in the truck with Mr. Johnson. We had the mare and colt in the truck."

The foregoing is the substance of the testimony of the state. No testimony was offered by the defendant.

The defendant in his petition in error has assigned several errors alleged to have been committed in the trial of his case which he insists is sufficient to secure a reversal. The errors assigned are:

"The court erred in overruling plaintiff in error's demurrer to evidence of the defendant in error.

"The court erred in admitting the introduction of the testimony which was incompetent, irrelevant, and immaterial and prejudicial to the rights of the plaintiff in error, over the objection of the plaintiff in error.

"The verdict of the jury is contrary to law.

"That the court erred in its instructions to the jury.

"That the verdict of the jury was contrary to the evidence introduced in said cause.

"The court erred in overruling plaintiff in error's motion for a new trial, to which action of the court the plaintiff in error then and there duly excepted.

"There was no legal evidence introduced by the defendant in error upon which a verdict could be legally rendered and upon which a judgment and sentence could be predicated."

All of these errors will be considered together as the argument of the defendant is based on the question of the insufficiency of the evidence to sustain a conviction, and that the testimony of Ernest Bowman, who was granted immunity of the court in order to testify, was the testimony of an accomplice, and that the state did not introduce sufficient testimony to corroborate the testimony of the accomplice. The defendant states in his

brief that the evidence is wholly insufficient to meet the requirements of the established rule requiring the corroboration of the accomplice's testimony.

Section 3071, O. S. 1931 (22 Okla. St. Ann. § 742), is as follows:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

This court has construed our statute often, reaffirming the provisions of section 3071, supra, and held that a conviction on the testimony of an accomplice cannot be sustained unless corroborated by other evidence tending to connect the defendant with the commission of the offense. Kirk v. State, 10 Okla. Cr. 281, 135 Pac. 1156; Cornett v. State, 42 Okla. Cr. 93, 274 Pac. 676; Rogers v. State, 57 Okla. Cr. 294, 48 Pac. (2d) 344, and cases cited.

The question for this court to determine is: Is there sufficient evidence to corroborate the evidence of Ernest Bowman, an admitted accomplice? The testimony shows that when the defendant was advised he was charged with the larceny, Mr. M. P. Witcher, the owner of the mare and colt, told the defendant if they were put back on the ground floor he would go no further, but if they were not returned he would go the limit, and the defendant replied in substance he would try to get them back. It is further shown that later on the defendant had a conversation with Mr. M. P. Witcher, at Lawton, and talked settlement with him but did not offer any definite amount. The defendant later sent for Mr. M. P.

Witcher, and asked him to meet him in Duncan, and Mr. Witcher met the defendant in Duncan at his request. The defendant wanted to settle with him and was advised by Mr. Witcher that a prosecution had been started and he could not agree to settle.

Mrs. Myrtle Bowman, the wife of Ernest Bowman, testified the defendant and Joe Bailey came to their home on the night of June 27, 1934, and woke them up and had the husband get up and go out and rope a colt for them, and in the conversation she heard Bailey and the defendant tell her husband the mare and colt were Witcher's; that her husband roped the colt and then, at the suggestion of the defendant, the defendant offered to give her husband $5 to ride the mare out toward Marlow; he did so and did not return until the afternoon of the next day.

This court has many times had under consideration the question of the corroboration necessary for an accomplice. In Bond v. State, 54 Okla. Cr. 39, 14 Pac. (2d) 425, this court in the first paragraph of the syllabus stated:

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

In Morton v. State, 46 Okla. Cr. 361, 287 Pac. 1087, this court in the first paragraph of the syllabus stated:

"The testimony of an accomplice to sustain a conviction need not be corroborated in every particular in detail. The rule is that the testimony of an accomplice must be corroborated by such other evidence of material

parts of his testimony as will tend to connect the defendant with the commission of the offense."

In McCurdy v. State, 39 Okla. Cr. 310, 264 Pac. 925, 926, in the fourth paragraph of the syllabus the court stated:

"Evidence corroborative of an accomplice need not directly connect the accused with the commission of the crime. It is sufficient, although circumstantial, if such evidence tends to connect him with its commission."

In Patterson v. State, 42 Okla. Cr. 255, 275 Pac. 387, in the first paragraph of the syllabus the court said:

"Corroboration of an accomplice's testimony does not mean separate and complete proof of a crime but only that there should be some evidence of material facts in addition to the testimony of the accomplice tending to connect defendant with the commission of the crime charged. Held, that under the record in this case there is ample corroboration of the testimony of the accomplice."

After a careful examination of the record in this case, we hold there is ample corroboration of the evidence of the accomplice Ernest Bowman. There are no reversible errors in the record.

The judgment of the trial court is affirmed.

DOYLE and BAREFOOT, JJ., concur.