## HENRY BLUMHOFF v. STATE.

No. A-9843. Aug. 13, 1941.
(116 P. 2d 212.)

Melton, McElroy & Vaughn, of Chickasha, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Henry Blumhoff, was charged jointly with one Jess Russell in the district court of Grady county, Okla., with the offense of larceny of domestic animals; was granted a severance, tried, convicted and sentenced to serve two years in the state penitentiary, from which judgment and sentence he appeals to this court.

Counsel for defendant argue that this case should be reversed for the reasons that the evidence is insufficient to support the conviction, and that the court committed prejudicial error in excluding certain testimony.

The chief contention of defendant is that there is no corroboration of the testimony of the accomplice, Jess Russell.

From a reading of the record, it appears that H. O. Freeman was the owner of a yellow Jersey heifer of the value of $37.50, which was sold at auction on January 18, 1938, at Frank Heath's place in Grady county to one Jess

Russell. This heifer was taken from Heath's premises without being paid for. About midnight, two days later, she was left in the vicinity of the Heath place.

Counsel for defendant admit that defendant was present at the sale and that the yellow Jersey was loaded into his pickup. They further admit that on the night Russell was arrested, the defendant took the heifer in his truck back to the place from which she is alleged to have been stolen.

Jess Russell, who had been jointly charged with defendant in this case, was the principal witness for the state. He testified, in substance, that he had worked as a hired man for defendant for about a month prior to the larceny of the Jersey heifer. Before he started working for defendant he had been employed by a Mr. Ray who called him Charley. Defendant and his wife called him Charley for about a week after he went to their place, until he asked them to call him by his right name, Jess.

Russell stated defendant took him in the pick-up to an auction at Heath's place near Chickasha. Defendant said that the other people would run the prices up too high on him if he bid, so he wanted Russell to do the bidding for him. Russell protested; but defendant insisted, saying that he would pinch him when the bidding became too high and he would know when to stop. Russell first bid on a black Jersey cow, selected by Blumhoff, but let her go when defendant said the bidding was too high. Defendant then had him bid on a yellow Jersey heifer; he again protested, but bid her in. Defendant told him to give the clerk his name. They had another argument; Russell did as defendant told him.

Witness asked Blumhoff to be sure and settle for the heifer, which he said he would do. They put her in the pick-up. Russell stayed with her awhile. When defendant

came back, upon witness' questioning, he assured him that the heifer had been settled for. They drove to defendant's home and put her in the lot.

On Wednesday, the day following, the yellow Jersey disappeared from the lot. Defendant told witness that he had sold her for $2.50 profit.

On Thursday the witness was carrying water into the house when defendant told him to run because the officers were coming. He refused to run or to hide, and stood by the stove reading the paper. Defendant introduced him to the officers as "Sparks." When they asked him his name, he told them it was Jess Russell. They took him to jail where he stayed for about three weeks.

The state offered further evidence that on the day after the larceny, H. O. Freeman, who owned the heifer, P. B. Smith, and George Cason talked with defendant at Duncan. They told him that a man by the name of Jess Russell had taken a yellow Jersey heifer from Heath's place in a pick-up that answered the description of defendant's, and asked him if he knew Jess Russell. Defendant replied that he knew a Russell, but did not know Jess Russell. He denied hauling a heifer away from the sale, and even having been present at the sale.

Brooks Hurvey, sheriff of Stephens county, stated that he and DeArthur Wilson, a deputy from Grady county, went to defendant's place on Thursday after the larceny. As they approached defendant's house, a man went in the back door. They told defendant that they were looking for Jess Russell who had taken the heifer. Defendant said there was no man there and that he had not been to the sale. They asked about the man they had seen go into the house. Defendant said he was the hired man.

DeArthur Wilson testified that defendant told him that his cattle were down in the field and that he could

look them over. Witness said he could see down through there and didn't see any that answered the description. Jess Russell was in the house and they took him to jail.

William McCarter testified that he had a pasture several miles from defendant's home, where defendant was keeping some horses; that sometime in the middle of the week defendant brought a yellow heifer to his place and left her. She was taken away two or three days later in the night. Witness was uncertain as to the dates.

Gertrude Blumhoff, wife of defendant, is the only witness who testified in his behalf. She stated that she had known Jess Russell as "Charley Russell." Russell told her that he had purchased the cow at a sale and that when he had another cow or two and some chickens he would be ready to start farming. The day after Russell bought the cow, defendant went to a sale at Duncan. When he came home he asked Russell if his name was Jess, and said that the people in Grady county were looking for him because he had not paid for the cow. Russell said that he had made a note for her. When the officers came the next day, Russell asked defendant to take the cow back for him. The cow had been in the lot all of the time where she could see her.

Defendant did not take the stand in his own defense.

Counsel for defendant admitted that the heifer was taken away from Heath's place in defendant's pick-up. The state introduced the testimony of several witnesses that defendant denied having been to the sale or knowing anything about the heifer. The man who was running the cattle out of the barn into the sale ring swore that defendant asked him to hold the Freeman heifer back for awhile as he had a partner coming who wanted to bid on the cow. Defendant stated to the officers that there was no man

in his house, when Russell was standing in the kitchen. Russell's testimony that the heifer was taken away from Blumhoff's place on Wednesday, after the larceny, is corroborated by McCarter's statement that Blumhoff had left the heifer at his place and that she disappeared in the night. Counsel for defendant further admitted that defendant left the heifer in the vicinity of Heath's during the night after Russell's arrest. Another witness for the state said that the heifer was not in the lot at Blumhoff's on Wednesday, in contradiction of the statement of defendant's wife that the Jersey was in the lot where she could be seen at all times. Defendant did not take the stand to explain his actions or his possession of the stolen animal.

This court held in the recent case of Scott v. State, 72 Okla. Cr. 305, 115 P. 2d 763, that:

"The rule, simply stated, is that the testimony of an accomplice must be corroborated by other evidence tending to connect defendant with the commission of the offense; that it is not necessary that such testimony, standing alone, should be sufficient to convict defendant; and that incriminating circumstances shown by the evidence are sufficient, if they tend to connect the defendant with the commission of the offense. * * *

"It is not essential that the corroborating evidence shall cover every material point testified to by accomplice or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to one material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or circumstances thereof." Davenport v. State, 20 Okla. Cr. 253, 202 P. 18; Henson v. State, 69 Okla. Cr. 273, 101 P. 2d 1060; Bliss v. State, 47 Okla. Cr. 225, 287 P. 778; Hathcoat v. State, 71 Okla. Cr. 5, 107 P. 2d 825.

In Johnson v. State, 62 Okla. Cr. 386, 71 P. 2d 786, it is stated:

"Evidence corroborative of an accomplice need not directly connect the accused with the commission of the crime. It is sufficient, although circumstantial, if such evidence tends to connect him with its commission."

There is independent evidence tending to connect defendant with the commission of the crime charged, and the weight and sufficiency of this evidence is for the jury. Where the jury has returned its verdict, this court will take the strongest view of the corroborating testimony that the evidence warrants. Haas v. State, 37 Okla. Cr. 335, 257 P. 1115.

We are of the opinion that the testimony of the accomplice, Russell, was corroborated, and that there is sufficient evidence to support the conviction.

Defendant maintains that the court committed prejudicial error in sustaining the state's objection to the following questions asked by defendant's counsel in the cross-examination of the witness, Russell:

"Q. Do you know you have never pled guilty in this case—you have not, have you? Mr. Williams: To which the state objects; that is incompetent, irrelevant and immaterial. The Court: Objection sustained. Mr. McElroy: Exception. Q. Never served any time in this case, have you? Mr. Williams: Objected to, incompetent, irrelevant and immaterial. The Court: Sustained. Mr. McElroy: Exception."

The general rule is that anything is proper on cross-examination which tends to show bias or prejudice on the part of the witness, his friendship or enmity toward either of the parties, or circumstances under which he has a temptation to swear falsely. Scott v. State, supra; Henry v. State, 6 Okla. Cr. 430, 119 P. 278.

During the examination of Russell it was brought out that he had been arrested in connection with this offense, held in jail about three weeks, charged jointly with defendant, released from jail on his own bond, and subpoenaed by the state as a witness. This is a sufficient basis upon which the jury could judge the credibility of the witness. However, the facts as to what kind of a plea he had made, if any, and as to whether or not he had been convicted and punished, in connection with the charge made against him growing out of this same offense, goes to the credibility of the witness and was competent for consideration of the jury. Yet, under the circumstances, we do not think the defendant was prejudiced by reason of the exclusion of this testimony since the jury assessed the minimum penalty allowed by law against him.

Finding no errors of sufficient importance to reverse the judgment of the lower court, the case is affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., absent.