### RUFUS DARNELL v. STATE.
No. A-9864.   Nov. 5, 1941.
On Rehearing Feb. 18, 1942 .
(118 P. 2d 1040; 122 P. 2d 395.)

34

H. P. Daugherty, of Chelsea, and H. Tom Kight, of Claremore, for defendant.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and W. Hendrix Wolf, of Jay, for the State.

BAREFOOT, P. J. Defendant, Rufus Darnell, was charged jointly with Cecil Redman and Bill Darnell with murder in Delaware county. A severance was demanded and defendant was tried, convicted of manslaughter in the first degree, and sentenced to serve a term of 30 years in the penitentiary, and has appealed.

Defendant was charged with the murder of Bluford Graham in Delaware county on the 18th day of June, 1939.

In his brief defendant sets out five assignments of error, but they are all presented together and we will so consider them in this opinion. It is first contended that the original complaint upon which the preliminary hearing was had and upon which defendant was bound over to the district court had not been sworn to as provided by law. The record reveals that the preliminary complaint was filed by the county attorney, and that he also signed the affidavit swearing to the same, but that the court clerk did not sign the same and attach his seal to

the oath. After defendant was held for trial in the district court and an information was filed against him, he was arraigned and pleaded not guilty. No demurrer or motion to quash the information was filed. At no time was any question raised as to the illegality of the complaint until on appeal. Under the decisions of this court defendant waived his right, if any he had, to question the validity of the preliminary complaint. Steiner v. State, 33 Okla. Cr. 298, 243 P. 1002.

It is next contended that the county attorney subpoenaed 37 witnesses and used only 16. There is nothing shown to the prejudice of defendant by this action.

It is next urged that the evidence does not show that the crime was committed in Delaware county and that the venue was not properly shown. One of the witnesses testified that the crime was committed within half a mile of Jay, and several other witnesses testified it occurred between Grove and Jay. The court could take judicial knowledge that both of these cities were in Delaware county. Doctor R. W. Otey, a witness for the state, testified that he examined the body at the scene of the killing and it was "In Delaware County, State of Oklahoma." This evidence was sufficient, in our opinion, to establish the venue in Delaware county. Wise v. State, 46 Okla. Cr. 200, 284 P. 306; Hunter v. State, 6 Okla. Cr. 446, 119 P. 445; Smith v. State, 31 Okla. Cr. 230, 238 P. 866; Tarkington v. State, 41 Okla. Cr. 423, 273 P. 1015.

It is next contended that the evidence is insufficient to sustain the conviction of this defendant. It is unnecessary to give a lengthy detail of this evidence. We have carefully read the record, heard the oral argument and read the well prepared briefs filed in this case. The evidence of the codefendant, Cecil Redman, and the de-

fendant himself is such that if believed by the jury, and it evidently was since they returned a verdict of guilty, was sufficient to sustain the verdict. It is true that there were some conflicts in the evidence, but in the main there was no conflict, and from the view we take of the case, even under the evidence of defendant himself and the surrounding circumstances, defendant was guilty of manslaughter in the first degree. Under the evidence of his codefendant, Cecil Redman, he was guilty of murder. Defendant's testimony was as follows:

"Q. What did you do? A. Well, I reached over and took the gun from him. Q. What did you do? A. I just stuck it out along the side of the car. I don't know why I did, just stuck it out of the window. Q. Did you aim to kill Bluford Graham? A. No, sir. Q. Did you aim to kill anybody? A. Not anybody. Q. Did you shoot anybody? A. Yes, I shot it. I just held it down there and shot it."

Defendant also complains that the county attorney asked questions of witnesses in such a manner as to prejudice the jury. We have examined the record in reference thereto and do not find anything prejudicial to the substantial rights of the defendant. The court sustained objections to questions that were inadmissible, and the trial was conducted in a manner that in no wise prejudiced the defendant. During the progress of the trial and while the witness Cecil Redman was on the stand testifying, the county attorney stated to the court and in the presence of the jury that he had been surprised by the testimony given by the witness and desired to place witnesses on the stand to impeach his testimony. The jury was excused and out of their presence the county attorney made a statement to the court of the statement made by the witness to him on the night before in the presence of Jap Holland, sheriff, Mr. Fox, undersheriff,

Charles Price, jailer, and Riley Hunt, attorney for defendant. After this statement had been made by the county attorney, the court asked the witness if he had made the statement, as follows:

"The Court: What about that? Did you tell them that last night? A. Yes, sir. Q. Is it so? A. Yes. Q. Why didn't you tell it awhile ago on the witness stand? The Court: You testified you came out of the by-road and Rufus went north towards Grove, and stopped, then you took the wheel; why did you turn around then? A. He told me to. The Court: Who did? A. Rufus. Q. Tell you what he was going to do? A. No, sir."

The court then recalled the jury and the witness testified before the jury about as had been stated by the county attorney to the court. This procedure was in the discretion of the court. We do not see that the defendant's rights were prejudiced thereby, especially in view of all the evidence in the case, including that of the defendant himself.

It is also contended by the defendant that the evidence of the witness Cecil Redman is not corroborated and that it should be, as he was an accomplice. In addition to the evidence corroborating his testimony, the evidence of the defendant himself clearly corroborates him in many respects. It has been held by this court that the evidence of the defendant may be sufficient to corroborate the testimony of an accomplice. Brewer v. State, 63 Okla. Cr. 389, 75 P. 2d 901; Howard v. State, 70 Okla. Cr. 165, 105 P. 2d 440; Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289; Spivey v. State, 69 Okla. Cr. 397, 104 P. 2d 263; Blumhoff v. State, 72 Okla. Cr. 339, 116 P. 2d 212; Scott v. State, 72 Okla. Cr. 305, 115 P. 2d 763.

The evidence in this case revealed that defendant, his brother, Bill Darnell, and his cousin, Cecil Redman, went to the town of Grove in Delaware county on the

evening of June 17, 1939. During the evening and night they visited beer halls there and were drinking. The deceased, Bluford Graham, was also in Grove at the same time. The record reveals that there had been a long-time enmity existing between the deceased and Bill Darnell, defendant's brother. Defendant testified he did not know of this ill feeling. During the evening a controversy arose between Bill Darnell and the deceased, Bluford Graham, in one of the beer halls. There was some conflict in the evidence as to whether the defendant was present at the time of this controversy and the part he took therein. At about 12:30 the defendant and his brother, Bill Darnell, and his cousin, Cecil Redman, went to their car for the purpose of going to the home of their Aunt Sally Fields. The deceased, Boone Van Hoosier, Roy Paddeck, and Vestal Roberts left Grove at about the same time as did the defendant and his party. They went toward Jay, in Delaware county, and turned off the 59 highway a short distance to take Roy Paddeck home. The car of the defendant had been following the car in which deceased was riding. They started on toward Jay, and a car was following them. Deceased was shot with a 22-caliber rifle while he sat in the car. He died from the effects of this wound.

The evidence revealed that he was shot by the defendant, he himself testifying that he fired the gun. The co-defendant Cecil Redman testified that the defendant leaned out of the car and fired the shot and that there was only one shot fired. Cecil Redman also testified that there was talk by the defendant and his brother about the killing of deceased, and that each one wanted to do it, but the defendant fired the shot. Under this evidence the jury was amply warranted in returning a verdict of guilty against the defendant.

Under the facts we do not feel the punishment assessed was excessive. It was assessed by the jury in the verdict they returned. It is true that there had been no ill feeling between the defendant and deceased, but there is evidence that he took up the quarrel of his brother and without justifiable or excusable cause fired the fatal shot that took the life of deceased. Under the testimony of Cecil Redman the defendant was guilty of murder. The fact that Cecil Redman had served a term in the reformatory of Louisiana was probably the reason for the jury finding the defendant only guilty of manslaughter in the first degree and not of murder.

For the reasons above stated, the judgment and sentence of the district court of Delaware county is affirmed.

JONES and DOYLE, JJ., concur.

On Rehearing.

BAREFOOT, P. J. A rehearing was granted in the above case, and counsel for the state and the defendant were requested to re-argue the above case. This hearing was had on the 27th day of January, 1942. We have again carefully reviewed the record and considered the facts and circumstances surrounding this case and have come to the conclusion that justice would be best subserved by reducing the punishment assessed from a period of 30 years in the penitentiary to a period of 15 years. It is unnecessary to further review the record and the evidence. As so modified the judgment and sentence of the district court of Delaware county is affirmed.