## JACK COUCH v. STATE.

No. A-10187.     Sept. 1, 1943.
(141 P. 2d 125.)

Tillman & Tillman, of Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

BAREFOOT, J.  Defendant, Jack Couch, was charged in the district court of Washington county with the crime of larceny of livestock, to wit, one spotted red two year-old heifer, the property of one Lee Sturm; was tried, convicted and sentenced to serve three years in the State Penitentiary, and has appealed.

The only contention for reversal of this case is that the judgment and sentence is contrary to the law and evidence. This is based upon the contention that the evidence of an accomplice is not corroborated. A short statement of the evidence is necessary.

Lee Sturm, a farmer who resided in Washington county, had a spotted two-year-old heifer stolen from his premises on the night of October 10, 1940. He and the sheriff of Washington county found tracks of a truck, and also of two persons, one wearing boots and the other shoes. at a place where the fence had been taken down, and the animal loaded in the truck. Upon investigation they found that the heifer had been sold by the defendant at the stockyards in Tulsa the following morning, October 11th, through the Blackwell Commission Company, to D. B. Jones, a butcher at Sapulpa. At his place of business they found the hide of the animal, which Mr. Sturm identified by his brands thereon.

Melvin Tyner testified for the state. He had theretofore pleaded guilty of the theft of the identical heifer defendant was charged with stealing, and had been sentenced to serve a term of six years in the penitentiary. He was sentenced on November 29, 1940, and had not been sent to the penitentiary, but had been kept in jail in Washington county, evidently to be used as a witness by the state against this defendant. The evidence revealed that he had been given many liberties as a trusty while in jail, and prior to the trial of defendant. He testified that he and the defendant Jack Couch and his brother Chet Couch had at different times worked for the Blackwell Commission Company at the stockyards in Tulsa. That he had known them for several years, and that the three of them had entered into a conspiracy for the purpose of stealing cattle, selling them on the market, and dividing the money three ways. That in pursuance of said conspiracy, he and the defendant, using a truck belonging to the brother Chet Couch, went to the farm of Lee Sturm on the night in question, stole the heifer, then proceeded to the home of Jack Cranor where they stole two calves, took them to the stockyards in Tulsa, unloaded them, and went to the Rogers Hotel, where they spent the remainder of the night. That the next morning the cattle were sold in the name of Jack Couch through the Blackwell Commission Company, for the sum of $51.16, and that he was given half of the money by the defendant, who retained the other half. At that time the witness was working for the Blackwell Commission Company, and after he got off work on the day the cattle were sold, he and the defendant went to the home of defendant's father in Nowata, defendant secured some clothes and they then went to McAlester; where they attended a rodeo, and defendant visited at

the penitentiary. The witness then returned to Oklahoma City.

The bookkeeper of the Blackwell Commission Company testified to drawing the check in payment for the three head of cattle and giving the same to the defendant, with whom she was personally acquainted, and the check was introduced.

The register of the Rogers Hotel was produced to corroborate the testimony of the witness Tyner.

The defendant admitted the sale of the heifer and of the two calves that were sold at the same time, and admitted receiving the check from the Commission Company and cashing the same at the Sand Springs bank. His defense was that he had purchased the three head of cattle in the town of Collinsville on the night of October 10, 1940, from the witness Melvin Tyner, who had them there in a truck, and that he paid him $45 in cash for the three head. He testified that after purchasing the cattle he went with Tyner from Collinsville to Tulsa in the truck, unloaded the cattle at the stockyards, went to the Rogers Hotel and the next morning sold the cattle in his own name. He testified to going to McAlester with Tyner, and that after leaving McAlester he went into Arkansas, then to Texas, New Mexico and to Arizona, where he was arrested in December, 1940, and returned to this state to answer the charge filed against him. There was evidence with reference to the defendant not telling of his intention to go to Arizona, and other evidence tending to corroborate the witness Tyner, which it is unnecessary to set out in detail.

Defendant, in corroboration of his testimony, offered two witnesses, Tom Bradshaw and Tom Bradshaw, Jr.,

both of whom testified to being with the defendant at a carnival in the town of Collinsville on the night of October 10, 1940, the night the cattle were stolen, and that they saw the witness Tyner drive up in the street in a truck with cattle therein. They testified to seeing the defendant and Tyner talking together, and Tom Bradshaw, Jr., testified that he saw defendant buy the cattle from the witness Tyner, and saw him pay him in cash the sum of $45, and saw the defendant count the money out to him.

The witness Tyner denied being in the town of Collinsville, and that he sold any cattle to the defendant, or that he paid him any money, as was testified to by the junior Bradshaw. He testified that he and the defendant went straight to the Blackwell Commission Company at the stockyards in Tulsa, after they had stolen the calves.

A number of prominent citizens of Washington and Nowata counties, some of them public officers, testified to the good character of the defendant.

From the above, which we think is a fair statement of the evidence, it will be readily observed that there is a direct conflict therein. We have so often held that in cases of this character, where there is a conflict in the evidence, and the jury has seen and heard the witnesses with an opportunity to judge their appearance and demeanor upon the witness stand, the verdict will not be set aside on appeal. Townsend v. State, 36 Okla. Cr. 155, 253 P. 108; Jackson v. State, 72 Okla. Cr. 226, 114 P. 2d 953; Petree v. State, 72 Okla. Cr. 323, 115 P. 2d 921; Darnell v. State, 74 Okla. Cr. 33, 118 P. 2d 1040, 122 P. 2d 395; Herren v. State, 74 Okla. Cr. 424, 127 P. 2d 215.

It is only when the evidence is insufficient to sustain the judgment and sentence that the same will be set aside.

Palmer v. State, 36 Okla. Cr. 169, 252 P. 1114; Wheeler v. State, 67 Okla. Cr. 291, 94 P. 2d 9.

Of course, if the evidence was such that it did not properly corroborate the witness Tyner, as a matter of law, then it would be our duty to reverse the case. But from the above statement of the evidence, it is clearly seen that his evidence was corroborated in many instances, and also by the evidence of the defendant himself. The only conflict was with reference to the purchasing of the cattle by the defendant from the witness Tyner, and his being on the streets of Collinsville with the cattle on the truck the night they were stolen. This evidence was properly presented to the jury under proper instructions, to which no exception was taken, and the jury found the issues in favor of the state, and against the defendant.

A case recently decided by this court, which has many similar facts to the instant case, was that of Mills v. State, 73 Okla. Cr. 98, 118 P. 2d 259. The first three paragraphs of the syllabus in that case read:

"Whether there is sufficient evidence corroborating testimony of an accomplice to justify submission of the case to the jury is a question of law for the trial court; but the weight to be given to such corroborating testimony is a question solely for the determination of the jury.

"The verdict of a jury upon disputed questions of fact will not be disturbed on appeal where there is any competent evidence in the record reasonably tending to support the same.

"In a case of larceny of domestic animals, independent evidence showing that defendant had transported the stolen animals and sold them is sufficient corroborating evidence of accomplices' testimony to require submission of the case to the jury."

278

And in Darnell v. State, supra [74 Okla. Cr. 33, 118 P. 2d 1041], it is said:

"An accomplice may be corroborated by the evidence of the defendant, as well as by others."

Defendant complains of the evidence of the witness Tyner by reason of the fact that he was sentenced to the penitentiary on a plea of guilty on November 29, 1940, and on the 3rd day of June, 1941, the date of the trial of this defendant, he was still in the Washington county jail, and had not been sent to the penitentiary, and that he had been given liberties by the sheriff, and permitted to attend public dances and functions with women, and witness Tyner admitted on the witness stand that this was true. We quote from his testimony:

"Q. Haven't you been down to Ochelata to a beer joint —(interrupted) A. No, sir. Q. —you and this married woman you have been running around with? I don't know her name so I will identify her that way. It's the same girl you went to Oklahoma City with. I may put it this way: In a drugstore in Ochelata? A. Yes, sir. Q. Where they sell beer? A. Yes, sir. Q. You have been there, haven't you? A. Yes, sir. Q. You have been with this girl, haven't you? A. Yes, sir. Q. And you didn't have an officer with you? A. No, sir. Q. How long did you stay out of jail on that trip. A. Saturday and Sunday. Q. Drank beer, didn't you? A. No. Q. You have been down to a Bob' Wills' dance in Tulsa, haven't you? A. No, sir. Q. Since you have been sentenced to the State Penitentiary, I mean? A. Yes, sir. Q. You have been, haven't you? A. Yes, sir. Q. With this same girl, haven't you? A. Yes, sir. Q. You have been up and down the streets of the Bartlesville with' your mother and this girl frequently since you were sentenced to the penitentiary, haven't you? A. Yes, sir. Q. In other words, you don't expect ever to go to the penitentiary for giving this testimony, do you? A. Yes, sir. Q. You do? A. Yes, sir. Q. Will you tell the jury, please,

how many times the former sheriff of this county, Mr. Eagle, let you go out and run around with this married woman over the country, in Tulsa and out to Bob Wills' dances since you were sentenced to the penitentiary? Tell about how many times you have run free and large since you promised to testify against this boy? A. None. Q. I beg your pardon? A. None. Q. You haven't been out at all? A. Not while Jim Eagle was in, no. Q. Have you been out since Ford was in? A. Yes, sir. * * * Q. You have been a virtual trusty since you were sentenced, haven't you, Mr. Tyner? A. Yes, sir. Q. You go where you want, when you want, and with whom you want. That's true, isn't it? A. Yes, sir."

The record does not reveal, nor do we know the reason for this, and it certainly cannot be condoned. When a defendant is sentenced to the penitentiary, the officers should see that he is transported there within a reasonable time for the serving of his sentence. Section 3152, O.S. 1931, 22 O.S. 1941 § 980. If he is to be used as a witness in other criminal trials, he can be brought back from the penitentiary to testify. To permit a prisoner to be held in jail for the length of time above indicated, is to place in the hands of the sheriff the pardon and parole power which is granted exclusively by the Constitution to the Governor of this state. However, these facts were presented to the jury in this case. They went to the credibility of the witness, of which the jury is the judge. If the jury had determined that the witness was testifying falsely by reason of the favors shown him, they would have so said by their verdict and rendered a verdict of not guilty. This was a question exclusively for the jury to decide. By this decision we are undertaking to say that this court approves the entertaining of prisoners who have been sentenced to the penitentiary by permitting them to attend public dances with women companions, pending their transportation to the penitentiary. If this witness had been

promised any immunity by reason of his appearance as a witness for the state, this fact should have been presented to the jury for the purpose of affecting his credibility as a witness.

Finding no error, and that the defendant had a fair and impartial trial, the judgment and sentence of the district court of Washington county is affirmed.

JONES, P. J., and DOYLE, J., concur.