Romey Lee WILCOXON, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12728.

Court of Criminal Appeals of Oklahoma.

Aug. 5, 1959.

Romey Lee Wilcoxon, pro se.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The charge was burglary with explosives. Romey Lee Wilcoxon was jointly charged in the district court of Pontotoc County with Walter Lee Sanders and Alonzo Scott Painter. A severance was granted and Sanders was tried first, and convicted. See Sanders v. State, Okl.Cr., 341 P.2d 643. Wilcoxon, hereinafter referred to as defendant, was next tried, convicted and the jury assessed the punishment at confinement in the State penitentiary for a period of thirty years. The statute, 21 O.S.1951 § 1441 provides for a minimum sentence of 20 years, and a maximum of 50 years.

The charging part of the information reads:

"* * * that Romey Lee Wilcoxon, Walter Lee Sanders, and Alonzo Scott Painter, late of Pontotoc County, did in Pontotoc County and in the State of Oklahoma, on or about the 12 day of March the year of our Lord One Thousand Nine Hundred Fifty-eight and before the commence-

ment of this prosecution commit the crime of burglary with explosives in the manner and form as follows: That is to say the defendants Romey Lee Wilcoxon, Walter Lee Sanders and Alonzo Scott Painter did, in said county and state, at the above named time and place, unlawfully, wilfully and feloniously enter a certain store building in the city of Ada, Oklahoma, said building being then and there controlled, occupied, and used by Standard Food Market, then and there unlawfully, wilfully, and feloniously by the use of and by the aid of nitroglycerine, dynamite, or other explosives, attempt to open a certain safe and receptacle then and there kept in the said store building by the said Standard Food Market, and then and there used by the said Standard Food Market for the secure keeping of money and other valuable property, without the consent of the said Standard Food Market, and with the felonious intent of the said Romey Lee Wilcoxon, Walter Lee Sanders, and Alonzo Scott Painter, then and there to crack and open said safe by the use of and by the aid of the said explosives; contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the State of Oklahoma."

For reversal defendant sets out in his petition in error and argues with separate heads that:

"1. The verdict of the jury is not sustained by sufficient evidence.

"2. The verdict is contrary to law.

"3. Errors of law committed during the trial and excepted to by the defendant.

"4. Errors of the Court in overruling the motion of the defendant to direct the jury to return a verdict of not guilty.

"5. The punishment assessed is excessive."

Considering the sufficiency of the evidence, the State used the same witnesses who testified in the trial of co-defendant Sanders, where the evidence offered in support of the information above quoted was summarized in some detail. The witnesses testified substantially as in the Sanders case, and Sgt. Jackson, one of the arresting officers, testified in this case. He did not testify in the Sanders case. And in this case the defendant testified, and co-defendant Sanders also testified for the defendant. The defendant in this case also offered the testimony of two additional witnesses whose evidence will be summarized.

Co-defendant and accomplice Alonzo Scott Painter, as he did in the Sanders case, testified for the State. Of course under such circumstances it is necessary that the testimony be corroborated. See 22 O.S.1951 § 742, reading:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

We shall briefly summarize the evidence offered by the State.

Accomplice Painter testified that he was 41 years of age, and said that Wilcoxon, Sanders and himself met some time in the evening of March 11, 1958 at the home of a Mr. Gordon in Tulsa; that after discussing their plans they later went out onto an oil field lease northeast of Tulsa and picked up some nitroglycerine that defendant knew about, and that they went from Tulsa to Muskogee to break into a Safeway Store. He said that just after opening the front door of the store the police came by and they left, and Wilcoxon mentioned going to Ada. That defendant told them the store that he had in mind would have about three days receipts and should be good for four or five thousand dollars. Witness said that they arrived in Ada about 4:30 in the

morning of March 12, and parked their car on the street directly back of the Standard Food Market. He said that they took with them in the car about seven or eight ounces of nitroglycerine, a crow bar, a sledge hammer and eight or ten punches and some blasting caps. That they broke into the store and entered through the front door; that they first rifled the cash registers and got $25 or $30 in silver; and then they went to work on the safe. He said that defendant Wilcoxon knocked the combination knob off the safe with a hammer, and tried to punch the pin back, but couldn't get it back far enough to put the nitroglycerine in the safe to blow it, and that there was an explosion and a fire. Witness said that they left the building through the back door and drove back to Tulsa, and were taken into custody by police officers that same morning. That part of the nitroglycerine and burglar tools used at Ada were still in the car, and the officers took possession of same.

Witness testified that in 1939 he was convicted of grand larceny in Oklahoma County, and in 1941 he was again convicted of grand larceny in the same county.

On cross-examination witness Painter testified that he made a mistake in saying that he and defendant and Sanders broke into a Safeway Store in Muskogee—that it was in Okmulgee.

In corroboration of the evidence of Painter the State called a number of witnesses. Sgt. Jackson and officer Sollers of the Tulsa Police Department told about seeing a car being driven about 30 miles an hour in a 20 mile zone in Tulsa, about stopping the car and recognizing the defendant, who was driving the car, about seeing tools usually used by burglars in the car and searching the three occupants and finding that all three had firearms, and noticing wire sticking out of a jacket pocket and finding $19.71 in change in the jacket, a large amount being wrapped pennies; a Ray-O-Vac flash light battery, cotton wadding and an electric blasting cap. The wire was wrapped yellow and green. The officers took into possession a crow-bar, a sledge hammer, a pry bar with hammer head welded on, two cold chisels, an electric drill, and a bottle containing an explosive liquid.

The defendants were arrested and placed in the city jail at Tulsa, but about 8 o'clock that evening they were turned over to W. M. Broadrick, sheriff of Pontotoc County, and transported to the county court house in Ada. Sanders and Painter were put in the county jail, and Wilcoxon was placed in the city jail. The Tulsa officers also delivered to Sheriff Broadrick the shoes of the defendants, articles of clothing, tools and other items found in the car at the time of the arrest.

The evidence further developed that on March 12, 1958 scrapings of dirt or soil were taken by Chester Stringer, State Crime Bureau Agent, from the shoes of Wilcoxon while he was being held in the city jail at Ada. A sample of the soil was also taken by Mr. Stringer from the alley just outside of the back door of the store building. The samples were turned over to the State laboratory for a comparison or test.

Mr. Pierre L. Wood testified that he was a chemist with the State Crime Bureau, and that his duties required the making of chemical analysis as required for criminal investigation work. Witness testified that he made tests or experiments concerning the samples of soil submitted to him by Chester Stringer and identified. He said: "The two samples were compared, spectrographically, and they were of the same chemical composition, and they were compared by a density gradient method, and both samples showed to have the same density, which would indicate that they were from the same source." In other words, it was shown that the soil from defendant's shoes and that in the alley back of the Standard Food Market, Ada, was of the same composition.

Witness also examined a blasting cap with wire attached and wire taken from near the safe in the Standard Food Market, and he said that his analysis "showed that

the wire of each was manufactured at the same source—which indicated that they had common source."

Witness examined a sample of paint taken from the safe at Standard Food Market and paint taken from some of the tools found in possession of defendant and his companions at the time of their arrest. Said witness: "Yes, sir; on these tools, the hammer and two chisels, there are fragments of green paint, which I removed portions of these and compared it with the paint submitted to the laboratory. Microscopic examination indicated that the paints were the same color and texture. The spectrographic analysis of these paint samples, the paint on both chisels, the hammer head and the side of the hammer, contained the same elements as this paint, which would indicate that they came from the same source."

The manager and assistant manager of the Standard Food Market, 510 East Main, Ada, testified, as did the sheriff of Pontotoc County, and Chester Stringer of the State Crime Bureau, and Billy Ellis, Fire Chief at Ada.

The evidence disclosed that about five o'clock in the morning of March 12, 1958 a fire was discovered at the store of the Standard Food Market and that the building and its contents were practically a complete loss. The evidence showed that the fire was caused by setting off an explosive in an attempt to crack the safe in the store. The evidence from those witnesses showed that an investigation disclosed that the front door of the store had been pried open, and that the burglars had left the store by prying off an inside lock and leaving by the back door, opening on the alley. They also found the combination knob of the safe had been knocked off, and that explosives had been used in an attempt to open the safe. Fire Chief Ellis testified that he found wire twisted to the safe knob of the safe. He turned the knob and wire over to Chester Stringer, of the State Crime Bureau.

The transcript of the evidence given by W. Alton Turner in the case of State v. Sanders was by stipulation received in evidence. Mr. Turner testified to testing the liquid shown to have been found in a whiskey bottle in the car being driven by defendant at the time of his arrest. He said that it was a form of liquid explosive; that he took a fourth of an ounce of the liquid and exploded it by use of a cap and fuse.

The defense did not demur to the evidence of the State, and from the evidence recited, it appears that there was ample circumstantial evidence to corroborate accomplice Painter, if believed by the jury. See Blumhoff v. State, 72 Okl.Cr. 339, 116 P.2d 212.

Walter Lee Sanders, codefendant, testified for defendant Wilcoxon. He said that about 9 o'clock the evening of March 11, 1958 he 'phoned Wilcoxon and asked him to pick witness up at the depot; that Wilcoxon did so, and that they went from there to the home of a man by the name of Gordon; that they sat there and talked for a little while, and had a drink or two, and that Alonzo Painter called up and asked them to come pick him up at the bus station, and they picked him up and the three of them drove back out to Gordon's house. Witness said that they decided they wanted to go fishing. He said that about 5 o'clock in the morning, on March 12, they drove out south of town and Wilcoxon got out of the car and got a little bottle of something and some wires and came back and got in the car. That they came back through West Tulsa, and as they drove down Riverside Drive, Jimmy Jackson, a Tulsa detective, stopped the car and searched them and found a pistol or two and arrested them and took them to the police station; that they were held there that day and were turned over to Sheriff Broadrick and he took them to Ada in his car.

Witness Sanders was then asked by defendant's attorney if he had ever been convicted of a felony. Sanders said, "Well, on

December 9, 1925, I was convicted of robbery and given five years. And in 1928. And this one here was 30."

On cross-examination, Sanders said, in part:

"Q. Chief, when you were tried for this same offense, here in June, why didn't you—you didn't tell this story to the jury, did you? A. On the advice of counsel, I didn't take the stand—that is right.

"Q. You didn't take the stand, at all, didn't put on any defense at all in your behalf, in June of this year? A. That is right."

The defendant Romey Lee Wilcoxon testified in his own defense, and stated in substance that about 9 o'clock on the evening of March 11, he received a 'phone call from Walter Sanders to come to the train depot and pick him up; that he picked him up and that they went back to Gordon's home; that they sat around a while and talked and had a few drinks; that about 9:30 Alonzo Painter called him and he went to the bus station and picked him up; that about 10:30 they decided to go fishing the next morning.

Defendant testified that he got up about 4 o'clock the next morning and after he had breakfast he went and picked up Painter and Sanders at the cafe in Tulsa. He said that they went out on the Sapulpa road and picked up some caps and nitroglycerine, which he said they were going to use to blast fish out of the Verdigris River. He said that they went from there through West Tulsa and as they started across the Eleventh Street bridge they heard a siren, and when they turned onto Riverside Drive, they were stopped by police officers Jackson and Sollers, and that after the officers had searched their car, they arrested them and took them to the city jail.

Defendant further testified that some time late that evening, Sheriff Broadrick called at the Tulsa city jail and took them to Ada, and that when they arrived at the court house in Ada, they took them up to the county jail and took him from there over to the city jail. He was also asked on direct examination by his own attorney if he had ever been convicted of a felony. Defendant admitted that when he was 18 years old, in 1930, he was convicted of car theft, that in 1933 he was convicted of grand larceny and was sent to Granite for three and a half years; that in 1936 he was convicted of robbery and received a sentence of ten years at McAlester.

On cross-examination defendant admitted, in response to questions asked him by the county attorney, that his total sentences would amount to 48 and a half years.

▆ Defendant complains in his brief about the introduction into evidence of the tools found in the car being driven by him at the time of his arrest. Of course the arrest being legal, the officers had a right to search the car for weapons for their own protection, and to prevent escape. Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464. Further, they saw wire and tools suitable for breaking and entering buildings, and found a bottle of liquid explosive in the car. They had a right to take such articles into possession, and as it developed, in view of the evidence of the accomplice Painter, and the corroborating evidence, the articles were without doubt admissible into evidence. They were germane to the issue raised by the crime for which they were arrested and charged.

▆ And while the evidence of the State and the defendant was conflicting in many respects, it was the province of the jury to weigh the evidence and the credibility of the witnesses. And as we said in Staley v. State, 97 Okl.Cr. 394, 264 P.2d 387, 389, which is applicable here:

"In this case, as in all cases, finding of fact was a matter for the determination of the jury. It has been repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even if there is a sharp conflict in the evi-

dence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479. The jury believed the evidence of the state and elected not to believe the alibi of the defendant. The evidence offered by either if believed by the jury, would have been conclusive on the issue of fact."

Defendant complains that the trial court erred in not granting him a continuance by reason of matters set out in a motion that the court overruled. The basis was an article that appeared in the Ada Evening News of October 19, 1958 illustrated by a picture of Sheriff Broadrick holding up a pair of shoes belonging to defendant, and with a saw blade protruding from each shoe. The article went on to say that when Wilcoxon was a prisoner in the city jail following the Standard Food Market fire, he almost sawed his way out of jail. The article said that the sheriff had to rip open the soles of the shoes to discover the saws.

The court permitted counsel to question the panel of jurors as to whether they had read the article or had formed an opinion of the guilt or innocence of the defendant of the crime charged.

It is the opinion of this Court from reading the record that each juror selected was a qualified juror, and that the court did not abuse its discretion in refusing to grant a continuance.

We have often said that an application for a continuance in a criminal case is addressed to the sound discretion of the trial court, and unless it clearly appears that there is an abuse of discretion this Court will not reverse the judgment for refusal to grant a continuance. Murphy v. State, 72 Okl.Cr. 1, 112 P.2d 438.

The case is affirmed.

NIX and BRETT, JJ., concur.