## JESS BROWN v. STATE.

No. A-8074, Sept. 12, 1931.
(3 Pac. [2d] 237.)

Gipson & Minton, C. L. Clearman, and M. L. Minton, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.  Plaintiff in error, hereinafter called defendant, was convicted in the district court of Beckham county of the crime of murder, and his punishment fixed by the jury at imprisonment in the state penitentiary for life.

Joe Pounds, Frank Griffin, and defendant were jointly charged with the murder of C. H. Phillips, sheriff of Beckham county.  Joe Pounds entered a plea of guilty and was sentenced to life imprisonment in the state reformatory at Granite.  A severance was granted the defendant Jess Brown and Frank Griffin, and each in separate trials found guilty of murder and sentenced to life imprisonment in the state penitentiary.  Neither the defendant nor his codefendant, Frank Griffin, testified in this case.

Defendant contends first that the evidence is insufficient to support the verdict of the jury, for the reason that the testimony of Joe Pounds, the accomplice, was not corroborated.

An examination of the record discloses that the testimony of Joe Pounds is corroborated by that of his brother and sister to the effect that they were present at the home of Jess Brown and Frank Griffin, codefendant, on the afternoon that this murder was committed that night; that there was a discussion as to the conduct of the sheriff in making raids on the premises of Brown and Griffin; that they left Joe Pounds at the home of the defendant at about 4 o'clock in the afternoon of the day upon which the homicide was committed; that defendant, Pounds, and Griffin had been drinking and discussing the conduct of the sheriff and his deputies towards each of them.  This evidence places all of the defendants together shortly before the homicide was committed.

Pounds is further corroborated by his sister, Mrs. Albert Schlecht, who testified that Pounds was at her home only a short time before the homicide was committed, endeavoring to obtain a pistol, and that some one was with him whom she took to be defendant.

Pounds testified that he went to the Rock Island Depot to try to procure a pistol, and is corroborated by the night ticket agent, Lauderdale, who testified that Pounds was there on that night trying to borrow a pistol, and that he came there in a Chevrolet car. It is undisputed that Pounds, Frank Griffin, and defendant were all riding around at that time in a Chevrolet car.

Pounds testified that the defendant and Frank Griffin accompanied him to the city of Sayre and waited in an automobile parked on the west side of Brown's grocery store while he went to the courthouse and killed the sheriff. He is corroborated by Julius Brown, who testified that the defendant and Frank Griffin were in the city of Sayre, about the time the homicide was committed, in an automobile parked on the west side of Brown's grocery store.

Pounds testified that after the shooting of the sheriff, he hurried down to where the defendant and Griffin were waiting for him in the parked car, and is corroborated by Henry Newby, night watchman of Sayre, who testified that he saw Pounds coming from the direction of the courthouse to the direction of Julius Brown's grocery store immediately after the killing.

Pounds testified that immediately after the killing, he and defendant and Griffin went to Erick and stopped at a filling station and drank some water out of the hose. He is corroborated by Mrs. Minor, who was in charge of the filling station, and who testified that at about 10 o'clock that night three men came to the filling station in

a car and stopped and drank some water out of the hose at the station.

Pounds testified that they went to Erick to arrange an alibi and returned to defendant's home. He is corroborated by the two Atkinson boys, who testified that they were present at the defendant's house on the night of the killing and there first learned that Sheriff Phillips had been killed a short time before that; that defendant said that the officers had been there and he was afraid they were trying to implicate him in the killing and asked these two boys to testify that they had seen him in Erick that night.

Section 2701, C. O. S. 1921, while providing that a conviction cannot be had upon the testimony of an accomplice unless such testimony is corroborated, only requires such corroboration as tends to connect the defendant with the commission of the crime. This section does not require that the corroborative evidence directly connect the defendant with the commission of the crime. This corroborative evidence need not be direct, but may be circumstantial only. Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676.

It is not essential that the corroborating evidence shall cover every material point testified to by an accomplice, or be sufficient alone to warrant a verdict of guilty. When an accomplice is corroborated as to some material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the jury could from that infer that he spoke the truth as to all. Davis v. State, 18 Okla. Cr. 453, 196 Pac. 146; McCurdy v. State, 39 Okla. Cr. 310, 264 Pac. 925.

In Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507, 509, this court said:

"The law prescribes no standard for the strength of the corroborating evidence, and there is a failure to corroborate only if there be no evidence legitimately having that effect."

In Haas v. State, 37 Okla. Cr. 335, 257 Pac. 1115, this court said:

"Where there is evidence in corroboration of an accomplice, tending to connect a defendant with the commission of the crime charged, the sufficiency of such corroborating evidence is for the jury."

In Key v. State, 38 Okla. Cr. 169, 259 Pac. 659, this court said:

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

Considering the evidence of Pounds in connection with the testimony of numerous other witnesses who testified for the state, and the inference properly to be drawn from the facts and circumstances in evidence, it is apparent that as a matter of law there is evidence, both direct and circumstantial, that tends to connect the defendant with the commission of the crime. The weight to be given such evidence was for the jury.

Measured by the standard laid down in the authorities above cited, there is sufficient corroboration to support the evidence of the accomplice, Pounds.

Defendant next contends that the court erred in admitting incompetent evidence of other crimes committed by this defendant.

It appears from the record that the court permitted the state to prove that the defendant had a short time before the homicide been convicted in the county court of Beckham county of violation of the prohibitory liquor laws, and that the deceased, C. H. Phillips, the sheriff of that county, was the main witness against defendant. The court also permitted the state to show that at the time of the commission of the homicide, there was another prosecution pending against defendant in the county court of Beckham county for an alleged violation of the prohibitory liquor laws of the state, and that the deceased Phillips was the main prosecuting witness.

The court permitted evidence to be introduced showing that the deceased sheriff had, on certain occasions, by virtue of search warrants, searched the premises of defendant for intoxicating liquors, prior to the institution of the prosecutions above referred to. All of this evidence was competent as tending to show motive on the part of the defendant to get the deceased Phillips, the sheriff, out of the way, that he might carry on his unlawful traffic in intoxicating liquors in that county. The mere fact that this evidence incidentally showed the conviction of the defendant as a part of the previous activities against him did not render the same incompetent, since it tended to show the motive on the part of the defendant to commit the crime.

In Harrell v. State, 43 Okla. Cr. 278, 278 Pac. 404, this court said:

"Evidence which tends to throw light on the guilt or innocence of a defendant, or which tends to show motive or intent for the commission of a crime, or which has some logical connection with the crime charged, is not inadmissible because it may also tend to show accused guilty of some other crime."

To the same effect are: State v. Rule, 11 Okla. Cr. 237, 144 Pac. 807; Johnson v. State, 22 Okla. Cr. 332, 211 Pac. 425; Jackson v. State, 42 Okla. 86, 274 Pac. 696; Carmichael v. State, 44 Okla. Cr. 160, 279 Pac. 515.

Defendant next contends that the county attorney was guilty of misconduct in his argument to the jury, in that his argument was calculated to arouse the passion and inflame the minds of the jury against the defendant.

This alleged improper conduct refers particularly to the argument of counsel relative to defendant's connection with the illegal traffic in intoxicating liquor. The evidence upon which counsel's argument was based was admissible as tending to establish motive. The record does not contain the argument of defendant's counsel. We are therefore unable to determine from the record whether this argument was in answer to propositions advanced by defendant's counsel, or whether counsel was attempting to draw proper deductions from defendant's evidence.

The trial court might well have confined this argument to narrower limits, but since it did not do so, we must look not only to the argument, but to the whole record to determine the probable effect of the argument. While portions of the argument were improper, the error is not sufficient to require a reversal of the case.

Defendant next contends that the court erred in failing and refusing to give proper instructions upon the necessity of corroboration of the testimony of an accomplice.

In the case of Hendrix v. State, 22 Okla. Cr. 230, 210 Pac. 734, this court approved instructions given in that case on the question of accomplices and corroborating evi-

dence in substance in the language of the instructions given in the case at bar.

This court has repeatedly held that instructions in a criminal case must be considered as a whole, and that, when so considered, if they correctly state the law of the case, they are sufficient.

We have carefully examined the record and considered the briefs and arguments of counsel, and, finding no fundamental error, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.