## SIMON MILLS v. STATE.

No. A-9848.   Oct. 15, 1941.
(118 P. 2d 259.)

Wall & Green, of Sallisaw, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Simon Mills, was charged jointly with Junie Blankenship and Cornelius Bolen in the district court of Sequoyah county with the larceny of two calves, was tried, convicted and sentenced to serve five years in the State Penitentiary, and has appealed to this court.

The defendant presents two propositions in his brief:

(1) There is not sufficient corroboration of the two accomplices who testified against the defendant to sustain the conviction.

(2) Misconduct of the county attorney in asking a prejudicial question prevented the defendant from having a fair and impartial trial.

In considering the first assignment of error, a brief summary of the evidence is necessary.

Melburn Hunicutt testified that he had lived in the vicinity where the three persons charged with the theft of his cattle lived for 14 years; that in that vicinity there was an open range; that he bought three cows from Mr. Randall, and they disappeared about the first of March. He looked all over the country for them. One of the calves died, but a roan bull calf and a red heifer calf, with marks on their ears, were missing; and he had never been able to find them. The red heifer calf had a bell on it when last seen.

Cornelius Bolen, young Indian boy, and charged jointly with the defendant, testified that he was riding through the woods with Simon Mills looking for a cow; that they saw the two calves that belonged to Melburn Hunicutt;

that Simon told him to get them up and he would pay him; that later, with the help of Junie Blankenship, who was riding Simon Mills' horse, they cut the two calves out from a herd and put them in an old barn. Simon Mills came with his dad and his brother, Joe Bolen, to their house about 3 or 4 o'clock the next morning; and he, his brother, and Simon Mills loaded the calves, drove by Andy Christie's, loaded another calf that his papa had sold to Simon, and drove on to the stock yards at Muskogee. It was too early to sell the cattle at the stockyards, so they unloaded them and went to town and ate breakfast. Later, Simon Mills sold the calves; and when they got to Vian he gave the witness $3 as his part of the money. The red heifer calf of Hunicutt's had a bell on it, which Junie put on the shelf in the barn. On cross-examination, the witness admitted having entered a plea of guilty to this charge, and that he had received a suspended sentence. He was eighteen years old.

Junie Blankenship, a nephew of the defendant, Simon Mills, was charged jointly with him and Cornelius Bolen with the offense herein, also testified for the state that on Thursday before the school election on Tuesday, he went to Simon Mill's to see about getting his horse to hunt a blue cow that was gone; and that while he was there, Simon had a talk with him about some yearlings, and wanted him to get those yearlings up for him; that he did not know at the time just what yearlings Simon meant. That the next morning he went to Simon's house, got his horse, and started towards Cornelius Bolen's; that he met Cornelius with 15 or 20 cattle; that they headed two of the calves off and put them in the barn. One was a red heifer calf; the other was a roan male calf. Simon told him on Thursday that if he would help Cornelius get up the calves that he would give him one-fourth of the money. He saw Simon

Mills the next time on Sunday, and Simon paid him $3 for his help in getting up the calves. On the following Thursday, witness was talking to Simon Mills, and Simon told him that the calves that he had sold belonged to Melburn Hunicutt.

Witness identified the bell taken off the red heifer, which he said he laid upon a rafter. This witness is also an Indian boy, 18 years old, who had never before been in trouble.

Dave Tate testified that he was in the business of buying cattle at Muskogee. He had known the defendant, Mills, three or four years. He bought three calves from the defendant about 8:30 a. m., on March 25, 1939, for $34. There was nothing out of line about the price he paid the defendant for the calves, and it was handled in the regular way.

Beth Stewart, an employee of the Live Stock Commission Company at Muskogee, identified the check, in the sum of $34, given to the defendant, Mills, in payment for the three calves, and stated that Mills and two Indian boys came into the office after the check, shortly after 8 o'clock on Saturday morning.

Andy Christie testified that he was a brother-in-law of Cornelius Bolen. That John Bolen had a calf at his place in March, 1939. That early in the morning, before daylight, Cornelius Bolen and the defendant came by his house, Cornelius borrowed a lantern, and they loaded the John Bolen calf in Simon Mills' truck and drove off. That there were some other calves in the truck.

Joe Bolen testified that he was a brother to Cornelius Bolen; that he helped his brother and Simon Mills load the calves in Simon's truck there at his father's place on Friday night. One of them was a red heifer calf and the

other, sort of a black looking male calf. That they got another calf at Andy Christie's house in the nighttime, and took the calves to the Tate Commission Company in Muskogee, and sold them. That he did not know whose calves they were at the time they were loaded, but that the defendant later said they were Hunicutt's. That the night the cattle were taken, he and his father were both drunk, and Simon Mills brought them home; and while Simon Mills was at their house, they decided to go on to Tahlequah and get some more whisky, and take the calves on to Muskogee.

Theodore Scaggs testified that he had lived near Simon Mills for six years; that about the 1st of March, 1939, Simon came to his place and asked if he had seen some cows that he had bought which were known as the Wilson cows; that the witness told him that he had seen the Wilson cows and the three Hunicutt calves three or four days before in the Earthly field. That the defendant, Mills, asked him at that time who owned the little red heifer and the little roan male calf, and he told him they belonged to Hunicutt.

The state thereupon rested.

Demurrer of the defendant was overruled and exception saved.

The defendant testified in his own behalf that he bought the three calves, which were hauled to Muskogee by him, on March 25th; that he bought one of the calves from John Bolen, and the two calves in controversy from Cornelius Bolen; that he paid John Bolen $9 for his calf and Cornelius Bolen $8 apiece for the other two calves; that he did not have any intimation from anybody that the cattle had been stolen; that he had several cattle of his own, and a pick-up truck which he used in buying and

selling cattle. He denied any conversation with Cornelius Bolen or Junie Blankenship concerning the preparations for stealing the cattle as related by these two self-confessed accomplices. The defendant, on cross-examination, denied the conversation with Theodore Scaggs, and admitted serving a term in the penitentiary for conviction of a felony.

Mildred Mills, wife of the defendant, testified about Cornelius Bolen and Junie Blankenship coming to their house on Thursday before the cattle were stolen on Friday; that she heard all of the conversation which occurred between them at that time, and that there was nothing said at all about getting up any cattle other that the blue cow belonging to Blankenship; that Junie, her brother, wanted to borrow Simon's horse to get up the blue cow.

Three witnesses were placed on the stand by the defendant to testify that the reputation of Junie Blankenship and Cornelius Bolen for truth and veracity was bad. The court allowed this testimony to be introduced, but only one of said witnesses testified to that effect.

These witnesses further testified that on the Sunday before the school election, Cornelius Bolen pulled $6 out of his pocket and wanted to have a poker game.

In rebuttal, Jess Randall testified that Simon Mills came to his place to have some stock bred to his stallion, about the 1st of March, 1939; that while he was there he asked the defendant, Mills, about some calves belonging to Melburn Hunicutt, which had gone; that he described the calves to the defendant, and the defendant said he had seen them that morning in the Young field; that he described the calves as one roan bull calf and a red heifer calf with a little bell on it.

Section 3071, O. S. 1931, 22 Okla. St. Ann. § 742, provides:

"A conviction can not be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

It is doubtful if any other statute on criminal procedure has been discussed by this court more than this statute.

Counsel for defendant have presented an ingenious and determined argument on behalf of the defendant in connection with his interpretation of this statute. We have carefully considered all of the statements made by counsel in his brief concerning the inconsistencies in the testimony and the deductions he has made with reference to the same but are unable to harmonize his reasoning with the decisions of this court.

Here, we have definite evidence of the possession by the defendant of the stolen calves, a transportation of them in the nighttime, and a sale of such calves to the Live Stock Commission Company at Muskogee. There is other evidence which, if believed by the jury, was sufficient to show that defendant knew the calves belonged to Hunicutt, and that Cornelius Bolen did not have any cattle which he could have sold to defendant. This evidence was sufficient to connect the defendant with the commission of the offense. There are other circumstances in connection with the asportation of these stolen cattle which strongly point to the guilt of defendant. It is true, after the state had made a prima facie case, the defendant in his own behalf admitted the sale of the calves as related by the state's witnesses, but claimed that he had purchased

the same in good faith, without any knowledge that they had been stolen. These conflicting statements merely raised questions of fact for the determination of the jury. The inconsistencies of the testimony discussed by counsel have all been determined adversely to the defendant by the jury's verdict.

The court has uniformly held that a jury's verdict upon disputed questions of fact will not be disturbed on appeal where there is any competent evidence in the record reasonably tending to support the same.

It is a question of law for the trial court as to whether there is sufficient corroborating testimony to justify submission of the case to the jury, but the weight to be given to the corroborating testimony is a question solely for the determination of the jury. We find sufficient undisputed facts in this case which strongly point to the guilt of the defendant; and in our opinion, the evidence was sufficient to require the court to submit the case to a jury for its determination.

Counsel for defendant present one other proposition. It is argued that the county attorney erred in cross-examination of the defendant, Simon Mills, in asking Mills if he had not told Theodore Scaggs to take a little bull calf, belonging to Paul Morris, and they would raise it on the halves. When this question was asked, the attorney for defendant objected to it in the following language:

"Mr. Wall: That is as dirty an implication as ever was put before a jury, Your Honor, and I object to it, Your Honor. It is detestable. It is wholly incompetent. It is put in there to prejudice the minds of the jury. Not that I think he can do it."

The court sustained the objection, and the county attorney proceeded with another line of questioning.

This question is clearly an improper question. No motion for a mistrial on account of this improper question was made and no exception was saved to the misconduct of the county attorney. For that reason the matter was not properly preserved for consideration on appeal; but, regardless of that fact, this court in its determination of the entire case has weighed this improper question and has considered it, together with the very strongly worded objection interposed by counsel for defendant, which in itself very probably put the county attorney in a bad light before the jury, as the objection interposed was sustained.

With the exception of this one question, the county attorney was very fair in the presentation of this case.

On the other hand, we find that the court was very liberal in his attitude towards counsel for defendant in allowing him to vigorously cross-examine the witnesses for the state. We find a great number of questions, thus asked, to be on incompetent matters.

The jury in this case found the defendant guilty, but were unable to agree upon the punishment to be assessed, and left the same to the court, who thereupon sentenced the defendant to five years in the State Penitentiary. There is no contention made that the punishment assessed was excessive; and this court, after a review of the evidence, and in view of the former conviction of a felony sustained by the defendant, is of the opinion that such sentence is not excessive.

We find no error of sufficient importance to require a reversal of this case.

The judgment of the district court of Sequoyah county is therefore affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.