Ralph MARTIN, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12981.

Court of Criminal Appeals of Oklahoma.

March 8, 1961.

Warren Watkins, Claremore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Plaintiff in error, Ralph Martin, defendant below, was charged by information in the District Court of Rogers County, Oklahoma, with the crime of larceny of domestic animals belonging to Raymond Sellmeyer. He was tried to a jury, convicted, and his punishment fixed at three years in the state penitentiary. Judgment and sentence were entered accordingly, from which this appeal is taken.

Upon the trial, the State presented the testimony of Russell Enlow, defendant's alleged accomplice, which testimony disclosed the following: Russell Enlow had known the defendant for about fifteen years and was in the company of the defendant for about twenty-four hours on October 15, 1959, during which time they agreed to steal some cattle from Raymond Sellmeyer. He further testified that the defendant's truck was used in the theft, that Ralph Martin was with him and helped him load ten head of cattle into the truck, and that the ground was wet at the corral where the cattle were loaded. On redirect examination, Enlow identified the boots worn by defendant on the morning of the larceny and stated that at that time the boots had "sloped" or "cowboy" heels, although at the trial date said boots had been resoled and flat heels had been put on them.

Raymond Sellmeyer, the owner of the cattle which were stolen, testified that he discovered some green paint on the loading chute that was used to load the cattle at the time they were stolen. He stated that he did not have any green trucks, but did have a green pick-up. However, the pick-up had not been backed up to the loading chute during the year 1959, and if it had been so backed, it would not reach as high on the ramp as the point where the green paint was discovered.

Sheriff Amos Ward, of Rogers County, testified that he investigated the premises and found some boot tracks near the loading chute, green paint on the chute and the floor thereof, and evidence that the cattle had been "rough loaded" in that the chute was partially broken through. He further stated that there was a lot of loose hair on the ground at the end of the chute and in the chute where the cattle had apparently been down and where their legs had slipped through between the ramp and the truck which apparently had not been perfectly square with the end of the ramp during the loading process. Sheriff Ward also testified that the truck used had to have a long wheel base, because there were no wheel tracks between the end of the chute and the blacktop county line road which runs by the loading chute. It would require a truck with at least seven feet between the rear axle and the end of the bed to span this distance without leaving the pavement. Subsequently, Sheriff Ward examined defendant's truck, which he found to be green in color with a long wheel base, and approximately seven feet between the rear axle and the rear of the truck bed. The Sheriff further related that at the time of his inspection of defendant's truck, he found a lot of white hair underneath the rear of the truck bed where cattle had apparently ran their legs when they slipped in the process of being loaded. He also testified that he had a conversation with the defendant concerning the stolen cattle, and that during this conversation, the defendant asked if any tire marks or footprints had been found at the scene. He was told by the sheriff that footprints had been found. The sheriff related a conver-

sation had with the defendant at a still later date, in which the defendant stated that he had taken his boots to be repaired. Thereafter, the defendant was arrested, taken to the boot shop, and his boots were picked up. The concluding testimony of the sheriff revealed that he made plaster of paris casts of bootprints at the loading chute and at the corral, and the casts along with defendant's boots were introduced into evidence.

Earl Hall, the proprietor of the boot shop, testified that the defendant brought a pair of boots to his place of business about October 20, 1959, to have them half-soled and the heels replaced. At the time that the boots were brought in, they had had "underslung" heels, pitched under at an angle of about forty-five degrees, and Hall replaced these heels with a "box" type heel. Sheriff Ward took possession of the boots from Hall on October 28, 1959. Hall identified the boots introduced into evidence as the same boots which the defendant had brought to him for repair. He further testified, when shown the cast of the boot print, that it was very similar to and looked a lot like the heels which he had removed from defendant's boots.

The evidence presented on behalf of the defendant attempted to establish his whereabouts at the time of the larceny, and tended to show that he was absent from the scene of the crime at the time that the theft was committed. It further indicated that he was not at any time near or in the company of the accomplice witness, and that he was with his family or in the company of others. The defendant called Horace Tate, who allegedly bought the stolen cattle from Russell Enlow, and Tate stated that he did not know the defendant. Next the defendant called his mother-in-law and his wife, and their testimony attempted to establish his whereabouts at the time of the larceny. One Shirley Sunderlin testified that her husband had possession of defendant's truck on the night prior to and the morning of the larceny, and that therefore, defendant's truck could not have been the one used in the larceny of the cattle. Defendant's Brother, Bill Martin, testified

that defendant often hauled cattle in his truck, and also allowed others to borrow the truck. Defendant took the stand and denied any part in the theft of the cattle or any knowledge of the theft.

Defendant's contentions upon this appeal are: (1) that the trial court erred in overruling his demurrer to the evidence, and (2) that there was not a scintilla of evidence to corroborate the testimony of the accomplice-witness, Russell Enlow. Defendant maintains that therefore the case should not have been submitted to the jury for determination.

■ The sole question before this court is whether the trial court erred in overruling the defendant's demurrer to the evidence. As is shown in the foregoing summation of the evidence adduced by both sides, the evidence was conflicting.

"It was the sole province of the jury to weigh the evidence and its credibility and substance. Even though the evidence was conflicting, the Criminal Court of Appeals will not substitute its judgment for that of the jury where the evidence reasonably tends to support the finding of the jury." Clark v. State, Okl.Cr. 327 P.2d 509, 510; Sandy v. State, 94 Okl.Cr. 80, 231 P.2d 374.

■ The evidence to corroborate the testimony of an accomplice-witness may be circumstantial. Sanders v. State, Okl. Cr., 341 P.2d 643; Wright v. State, Okl. Cr., 285 P.2d 445; Howerton v. State, 65 Okl.Cr. 457, 88 P.2d 904. Each fact and circumstance relied upon to corroborate the testimony of an accomplice-witness need not, when considered alone, establish a connection between the defendant and the crime. It is sufficient if all the facts and circumstances when considered together are consistent with each other and inconsistent with any other reasonable hypothesis but that the defendant was connected with the commission of the crime.

■ In the instant case, the evidence relied upon by the State to corroborate the testimony of accomplice-witness Russell

Enlow was: (1) the green paint found on the loading chute along with the fact that defendant's truck was green; (2) the plaster casts of boot prints taken from the corral by Sheriff Ward and introduced into evidence along with the boots alleged to have been worn by the defendant on the morning of the theft; (3) the loose hair lying on the ground at the end of the loading chute and in the chute used to load the cattle, and the hair underneath the rear end of defendant's truck; (4) the fact that a truck with a long wheel base was used in the transportation of the cattle, and that defendant's truck has a long wheel base; and (5) the fact that in a conversation with Sheriff Ward, the defendant inquired as to whether there had been any tire or footprints found at the scene, and that upon being informed that footprints had been found, his subsequent taking of his boots to a repair shop and having the type of heel changed.

The presence of the white hair in the loading chute and the hair found on the defendant's truck under the rear of the bed, standing alone, is a weak circumstance which in and of itself would not be sufficient corroboration of the testimony of the accomplice-witness. However, it is slight evidence tending to place the truck at the scene of the crime.

The presence of green paint on the loading chute and the fact that defendant's truck was green, when considered alone, in the absence of chemical analysis matching the two paints, would not be sufficient evidence to support the testimony of the accomplice, but creates some slight evidence that the truck of the defendant may have been used in the theft.

Perhaps the most convincing evidence tending to connect the defendant with the crime was his inquiry of the sheriff as to whether foot or tire prints were found at the scene of the theft, and his subsequent conduct in having his boot heels changed.

The plaster casts taken at the scene and the boots of the defendant in their altered condition were accepted as a part of the evidence at the trial, and the jury had an opportunity to observe and compare them. These circumstances tended to place the defendant at the scene of the crime, and it was for the jury to determine the weight and value to be given this evidence.

■ We are of the opinion that there was sufficient circumstantial evidence to warrant the trial court presenting it to the jury for their consideration, and that therefore, the demurrer was properly overruled. Under the rule stated in Blumhoff v. State, 72 Okl.Cr. 339, 116 P.2d 212, 215, "Where the jury has returned its verdict, this court will take the strongest view of the corroborating testimony that the evidence warrants." See also Haas v. State, 37 Okl.Cr. 335, 257 P. 1115.

■ This court has also uniformly held that a jury's verdict upon disputed questions of fact will not be disturbed on appeal where there is any competent evidence in the record reasonably tending to support the same. Mills v. State, 73 Okl.Cr. 98, 118 P.2d 259.

Every fact and circumstance referred to herein was consistent with the jury's finding that the defendant was connected with the commission of the offense charged. For this reason the judgment of the District Court of Rogers County is affirmed.

NIX, P. J., and BRETT, J., concur.