Laverne CALHOUN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–13664.

Court of Criminal Appeals of Oklahoma.

Sept. 22, 1965.

Wilson Waters, Denison, Tex., Bill Moore, Durant and Atoka, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Joseph C. Muskrat, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Laverne Calhoun, hereinafter referred to as defendant, was convicted in the district court of Bryan County on a charge of conjoint robbery by force, and on December 15, 1964 was sentenced to serve five years in the state penitentiary for such crime, in keeping with the verdict of the jury. Appeal has been perfected to this court.

The information in this case charged that one Anderson Bully and this defendant on July 19, 1964 committed the crime of robbery by force.

The record shows that Anderson Bully entered a plea of guilty to this charge and was sentenced to serve five years in the state penitentiary. He was returned to Durant from the state penitentiary and testified for the State on the trial of this defendant.

Anderson Bully testified that on the night in question he went to a beer tavern south of Durant, which is known as "Harold's Place". While there, he saw the defendant and Oscar Dennington in the tavern. That later, the defendant approached him and asked if he would like to make some money, and said that Oscar Dennington had two or three hundred dollars in his billfold. She instructed witness to go down the road, "acting like a hitch-hiker"; that she would get Dennington in her car, and when they reached the place where he was standing, she would pick him up. After he got into the car, he was to hit Dennington on the head and rob him. They would split the proceeds of the robbery fifty-fifty.

According to this witness, Anderson Bully, they carried out this plan. He said when he got in defendant's car he found a small crowbar on the back seat of the car, with which he struck Dennington several times; that Dennington resisted; they fought in the car, and finally "we wrestled on out", and fought on the ground. His testimony was that the crowbar slipped out of his hand, after they were out of the car, because it was "slick with blood", and that he took Dennington's billfold out of his hip pocket when Dennington "went limp".

Bully testified that he saw a car approaching from the rear, so he got back into the defendant's car, and he and defendant drove on a short distance, then turned the car around and went back to Durant. They both counted the money in the billfold, and discovered it contained only nine twenty dollar bills, totalling $180. He said the defendant then told him that Dennington had some money in his shirt pocket, and she wanted to go back and search for it, but he refused to do this.

Bully continued, that after the fight and on the way back to Durant, he removed his shirt and threw it out the car window, because it was torn and bloody. He said the defendant took the billfold to count the money herself, and after she did that, she gave him $20 and drove him home. He said he wanted to go into his house to put on a clean shirt, but when he got out of the car the defendant gave him another twenty dollar bill, and drove off. He stated that he did not see the defendant again until they were arraigned together in court.

The victim of the robbery, Oscar Dennington, told a story similar to that of Anderson Bully, except that the details concerning his contact with the defendant were included. Without going into those details, it will suffice to say that he entered the automobile of defendant expecting to be driven home. He contended that the defendant suggested they drive to Denison, Texas, and they were en route to Denison when the defendant, against his advice, picked up Anderson Bully. Dennington's testimony corroborated the fight between himself and Bully. His story also corroborated Bully's testimony concerning the approaching car, which he attempted to flag down, but without success, and after which he crawled to a farm house. He said the people at the farm house called the police and ambulance.

G. T. Rich, of Arlington, Texas, testified that he was the driver of the car referred to as the "approaching car". Also that he suspicioned something was wrong and obtained the license number of the car. That he drove alongside of it and saw that its occupants consisted of a man and a woman, and the woman was driving. The testimony of Mrs. Rich was essentially the same as that of her husband.

The defendant testified in her own behalf. She contended that Oscar Dennington asked her to drive him to Denison, which she agreed to do, after he paid her $20. She admitted that she saw and talked with Anderson Bully in one of the taverns, which she and Dennington had visited prior to the drive toward Denison. However, she denied any previous arrangements with Anderson Bully, and said that the reason she picked him up on the highway was because she had become afraid of Dennington, and she recognized Bully and knew that he was a friend of her husband. Her testimony corroborated the story of the fight, but said that it commenced when Dennington attempted to make love to her, as they drove down the road. At that time, she contended, she told Dennington, "just get away and leave me alone." Bully then said to Dennington, "God damn you, I will kill you", and struck him on the head. She stated further that she stopped the car and jumped out. After the two men got out of the car and continued the fight, she got back into the car. She experienced some difficulty getting the car started, and when she did, Bully jumped back in, and they drove away. She stated further that they left Dennington on the road, and as they left another car approached from the rear.

Counsel for defendant sets out three errors in his brief. The first error is: "The district court committed error in admitting certain prejudicial evidence and exhibits in the trial below." Defendant did not cite any authority in support of this proposition.

Defendant's principal contention is that the admission in evidence of the small crowbar, which Anderson Bully testified he found on the back seat of this defendant's car and which he used in striking Dennington, was error. Counsel contends that a proper foundation had not been laid for the introduction of the crowbar.

In Gouard v. State, Okl.Cr., 335 P.2d 920, this court said:

"Before physical object * * * is admitted in evidence, it must be sufficiently connected with the crime itself by proper identification. However, it is not necessary that such identification should positively and indisputably describe such article. If it is sufficiently described to justify its admission in evidence, the lack of positive identification goes to the weight of such evidence rather than its admissibility."

The general rule is announced in 22A C.J.S. Criminal Law § 709:

"To justify their admission, a proper foundation must be laid, and such articles must be identified as the articles they are purported to be, and shown to be connected with the crime or with accused; however, such identification is not required to be positive, absolute, certain, or wholly unqualified, and where there is some evidence for this purpose, objections to its sufficiency go to the weight rather than to the admissibility of the articles in question."

Admittedly, there is nothing to connect this defendant with the crowbar, other than the testimony of Bully and the statement that he found the same on the back seat of her car. However, under these circumstances, we are of the opinion that the court was justified in admitting the crowbar into evidence.

Defendant's second proposition is: "The trial court committed error by making certain statements to the jury which were coercing and urging, and compelled the jury to reach their verdict."

Defendant bases this contention upon the fact that after the jury had been out for two and a half hours, the court called them into the court room, and asked if they were making any progress, and how they stood just as to numbers. The judge was advised that on the last ballot the jury stood nine to three. After a short conversation, the following discussion took place, to which defendant excepted.

One member of the jury, a Mr. Whittle, stated to the court:

"Judge, I would like to ask a question, please.

"By the Court: Well, I may not be able to answer it, but—

"Mr. Whittle: Could this be a hung jury?

"By the Court: Well, it could be, yes, sir.

"Mr. Whittle: Well, that's the way we stand. Nine to three.

"Mr. Compton [juror]: Could I ask you a question?

"By the Court: Well, let's try.

"Mr. Compton: Some of us would like to hear that tape recorder, if possible.

"By the Court: He could read portions of the testimony. What portion would you like to have read back?

"Mr. Compton: Well, I don't want any of it, myself.

"Mr. Whittle: If we couldn't agree, could we just have a hung jury?

"By the Court: It would be, if you couldn't agree. I would have to declare a mistrial and you would have to be discharged."

Defendant contends that it was obvious from the foregoing that this was a hung jury, and that the judge, by his remarks, attempted to coerce the jury to reach an

agreement, and in so doing, he indicated what their verdict should be.

■ After reviewing the record before this court, we do not agree with counsel's contention. In Reed v. State, Okl.Cr., 335 P.2d 932, we said:

"It is not improper for trial judge, after a jury has been deliberating for some time, to call them into court to ascertain whether there is reasonable probability of reaching a verdict and to inquire of the likelihood of them so doing. However, the court must exercise great caution to say nothing tending to coerce an agreement, to indicate his feelings in the case, or to invade the province of the jury."

And in the body of the opinion, Judge Nix, speaking for the court, said:

"In the instant case we are unable with any quantity of refined reasoning to interpret the action or remarks of the trial judge as prejudicial to the rights of the defendant. The remarks of the trial judge, about which the defendant complains, cannot in the opinion of this court be interpreted as against the defendant nor do they intimate the feeling of the trial court in the matter. The entire discussion by the court to the jury reflects that the court's only purpose was to ascertain whether there was reasonable probability that the jury could reach a verdict. The trial judge was within his rights in making inquiry so he might exercise his discretion in requiring additional deliberation or to discharge the jury."

■ It is our opinion that this statement applies equally to the facts in the case at bar. The court had a right to inquire as to how the jury stood numerically, and said nothing to indicate how he thought the case should be decided.

We consider this assignment without merit. See also Highfill v. State, 26 Okl. Cr. 420, 224 P. 729.

Defendant's third proposition is, "The evidence introduced into the trial of this case was insufficient both in law and fact to sustain the jury's findings."

■ Defendant contends that there is no evidence in the record that this defendant committed the crime charged; and that this defendant was convicted only on the testimony of a purported accomplice, and that the testimony of a purported accomplice alone is not sufficient to convict a defendant.

Title 22 O.S.A. § 742 provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Anderson Bully was an accomplice of this defendant. Defendant in her testimony admitted that she talked with Bully in the tavern. The prosecuting witness, Dennington, stated that he saw Bully, as well as this defendant, in the same tavern. Defendant admitted that she picked Bully up a short distance from the tavern, and that Dennington did not want her to pick him up. Mr. and Mrs. Rich both testified to seeing a commotion on the road and that they saw a man staggering. They described defendant's car as to make, color and the tag number, and that there was a man and woman in the car, the woman driving. The sheriff testified that after he picked up the defendant, she implicated Bully as the party with her at the time of the robbery.

■ There was independent evidence tending to connect the defendant with the commission of the crime charged, and the weight and sufficiency of this evidence was for the jury. This court has often stated that it will take the strongest view of corroborating testimony which the evidence warrants. Blumhoff v. State, 72 Okl.Cr.

339, 116 P.2d 212; Haas v. State, 37 Okl. Cr. 335, 257 P. 1115.

In Heartsill v. State, Okl.Cr., 341 P.2d 625, this court said:

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this Court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

"The law prescribes no standard for the strength of corroborating evidence, and there is failure to corroborate only if there is no evidence legitimately having that effect."

■ A jury's finding upon a disputed question of fact will not be disturbed on appeal where there is any competent evidence in the record reasonably tending to support the same. Mills v. State, 73 Okl.Cr. 98, 118 P.2d 259; Martin v. State, Okl.Cr., 360 P.2d 253, and cases cited.

■ We are of the opinion that every fact and circumstance referred to herein was consistent with the jury's finding: that the defendant was connected with the commission of the crime charged

For the reasons stated herein, the judgment of the district court of Bryan County is affirmed.

BUSSEY, P. J., and NIX, J., concur.