Howard Lee GLAZE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–950.

Court of Criminal Appeals of Oklahoma.

June 16, 1977.

See also Okl.Cr., 565 P.2d 715.

John T. Elliott, Public Defender, John M. Stuart, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Duane N. Rasmussen, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Howard Lee Glaze, hereinafter referred to as defendant, was convicted upon trial by jury in the District Court, Oklahoma County, Case No. CRF–75–3708, for the offense of Attempted Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 42 and 21 O.S.1971, § 1435. The defendant was sentenced to serve a term of four (4) years in the custody of the Department of Corrections and from said judgment and sentence a timely appeal has been perfected to this Court.

In support of its case in chief the State called three witnesses, the first being Mr. George L. Hales. He testified that he was the owner and occupant of a mobile home in the vicinity of Jones, Oklahoma, in Oklahoma County; that on the night of September 26th, 1975, he arrived at his home at approximately 7:00 p. m. after going shopping. Upon arrival at his home, he observed a blue Cadillac sitting in the driveway. At first glance, it appeared the automobile was unoccupied; however, as he and his wife exited their car and approached the Cadillac, a man raised his head from the front seat of the automobile. Mr. Hales then questioned the man while his wife went in the mobile home. The man, whom he identified as Raford Lee Tuggle, told Mr. Hales that he was lost and looking for Hiwassee Road. At approximately that time Mrs. Hales yelled not to let anyone get away because something was wrong inside the house. At this time Mr. Hales observed the automobile in which Mr. Tuggle was sitting, pull away at a high rate of speed and strike a cattle guard-type apparatus as it fled the scene. However, Mr. Hales was able to obtain the tag number of the automobile as it drove away. He then described the condition of the mobile home before going shopping and its condition when he returned.

The next witness for the State was Rayford Lee Tuggle, who testified that he was a co-defendant in this case, having plead guilty to the offense of Attempted Burglary in the Second Degree. He stated that he met Mr. Glaze, the defendant, in the afternoon of September 26, 1976, at which time they both stated they needed some money. They then drove to the mobile home of Mr. Hales' and parked the blue 1966 or 1967 Cadillac where the defendant got out of the car and instructed Mr. Tuggle to honk the horn if anyone approached. Mr. Tuggle stated that he honked the horn on two occasions—once when a car came but did not enter the driveway, and finally when Mr. Hales drove up. His testimony concerning the conversation with Mr. Hales was essentially the same as that witness.

Mr. Tuggle then testified that he was approached by the police and originally denied being at the scene, but later "confess-

ed" and implicated the defendant herein for the reason he did not want to "take the rap alone."

Cross-examination of this witness concerned a promise by his attorney that if he plead guilty and "turned State's evidence" he would most probably obtain a suspended sentence.

The final witness for the State was Officer Bill Davis of the Jones Police Department. Officer Davis testified that he answered a call to go to the Hales' residence on the 26th of September, 1975, in the late evening hours. At that time he was given a description of Mr. Tuggle along with a description of a 1965 blue Cadillac and a tag number. He testified he then received a report that the automobile belonged to the defendant in this case and after further investigation, he arrested both the defendant and Mr. Tuggle.

On cross-examination, Officer Davis related that Mr. Tuggle at first denied his participation, but later admitted it and also implicated the defendant.

The State then rested and the defendant demurred and the same was overruled.

 For his first assignment of error, the defendant urges that the trial court erred in failing to sustain his demurrer to the State's evidence in chief; more specifically, that there was insufficient evidence to corroborate the testimony of an accomplice, particularly regarding the defendant's participation in the offense.

As a safeguard for the purpose of protecting an accused, the Legislature long ago enacted 22 O.S.1971, § 742, which reads as follows:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Many states have a similar statute, the primary purpose of which is to assure that no person is convicted of a crime solely upon the testimony of an accomplice whose motives for testifying might be questionable.

The real question arises, then, concerning the strength of the corroborating evidence. This Court has long held with the view that such evidence need not be great, either in quantity or quality. In *Calhoun v. State*, Okl.Cr., 406 P.2d 701 (1965), we stated, in the 6th paragraph of the Syllabus:

"Each fact and circumstance relied upon to corroborate testimony of accomplice need not, standing alone, establish a connection between the defendant and crime, but it is sufficient if all facts and circumstances, when considered together, are consistent with each other and inconsistent with any other reasonable hypothesis but defendant's connection therewith."

And again in *Hathcoat v. State*, 71 Okl.Cr. 5, 107 P.2d 825 (1940), we stated:

"The law prescribes no standard for the strength of the corroborating evidence, and there is a failure to corroborate only if there be no evidence legitimately having that effect. *Underwood v. State*, 36 Okl.Cr. 21, 251 P. 507."

We have also held with the view that this Court may take the strongest view of the corroborating testimony that such testimony will warrant where the sufficiency of the corroborating evidence is challenged. *Barber v. State*, Okl.Cr., 388 P.2d 320 (1964); *Barrett v. State*, Okl.Cr., 357 P.2d 1020 (1960); *Eaton v. State*, Okl.Cr., 404 P.2d 50 (1965).

A careful review of the record indicates that there was independent evidence which tended to connect the defendant with the commission of the offense of "Attempted Burglary." While there is no doubt that the most damaging evidence against the defendant was given by his accomplice, there is evidence that defendant's automobile was used in the commission of the offense. [Tr. 26 and 27] There is also evidence from which the jury could find that the offense was committed by two or more persons. We have also held that corroborating evidence may be solely circumstan-

tial. See *Heartsill v. State*, Okl.Cr., 341 P.2d 625 (1959).

In a fairly recent case, with very similar circumstances, this Court upheld such a conviction. In that case, concerning Burglary in the First Degree, a man and his wife were awaken in the middle of the night to see two individuals inside their home. After the owner of the premises attempted to fire on the defendants, one got away while the other remained at the scene. The remaining accomplice gave the initials of the defendant plus the make and color of the automobile in which he was riding. Some time later a local sheriff arrested the defendant for Driving While Intoxicated, while he was asleep in an automobile matching that description and learned that his initials were the same as those given by the accomplice. In that case[1] the only corroborating evidence coming from independent sources was that there were two burglars and a make and color of the automobile. In *Collier*, we stated:

"We consider the circumstantial evidence that defendant was apprehended in a 1959 red and white Chevrolet automobile as being sufficient circumstantial evidence to corroborate the accomplice's testimony in the State's case. . . . This circumstance standing alone was sufficient to warrant the trial court's denial of defendant's demurrer and motion for directed verdict."

Therefore, we find as a matter of law, that there was sufficient evidence tending to corroborate the testimony of the accomplice to justify the trial court's overruling the demurrer and sending the issue to the jury. We also note that the trial court adequately instructed the jury regarding an accomplice and the evidence required to corroborate his testimony as well as an instruction concerning circumstantial evidence. It has been held by this Court that the sufficiency of the evidence tending to connect the defendant with the commission of the crime is for the jury. *Scott v. State*, 72 Okl.Cr. 305, 115 P.2d 763 (1941); *Hathcoat v. State*, supra, and *Wilkins v. State*, 70 Okl.Cr. 1, 104 P.2d 289 (1940).

Finally, we are very reluctant to overturn the verdict of a jury when there is some evidence tending to connect the defendant with the commission of the offense. *Bond v. State*, 54 Okl.Cr. 39, 14 P.2d 425 (1932); *Brant v. State*, 53 Okl.Cr. 216, 9 P.2d 963 (1932), and *Brown v. State*, 52 Okl.Cr. 110, 3 P.2d 237 (1931).

Therefore, we hold that while the corroborating evidence was not great, it was sufficient for the trial court to submit the issue to the jury for their determination.

 For his next assignment of error the defendant urges that the trial court erred when it abused its discretion by refusing a request by two jurors during deliberations to have certain testimony read to them.

The record reveals that after the jury had retired to deliberate, the trial court brought the jury back into the courtroom, at which time the following incident occurred:

"THE COURT: . . . And if you have reached a verdict before I send her back to get you, then press the buzzer and let us know that you have a verdict.

"WOMAN JUROR: May I ask a question?

"THE COURT: Not about this case.

"WOMAN JUROR: Oh, okay.

"THE COURT: Now, once the evidence is in, we cannot have any further questions or I can't answer any questions.

"MAN JUROR: Could part of the testimony be read?

"WOMAN JUROR: It is part of the testimony.

"THE COURT: Not ordinarily. I have frowned on it for one reason and that is the testimony taken out of context sometimes tends to give too much stress to it perhaps one way or the other.

"And for that reason, sometimes it is permitted but generally I frown on it.

"You may retire then and let us hear from you." [Tr. 41–42]

The provisions of 22 O.S.1971, § 894, are as follows:

---

1. *Collier v. State*, Okl.Cr., 520 P.2d 681 (1974).

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

This statute has been construed to be mandatory only with regard to the procedure of bringing the jury back into the courtroom. See *Jones v. State*, Okl.Cr., 456 P.2d 610 (1969). The determination of whether or not the jury's request is granted lies within the judicial discretion of the trial court. *Kovash v. State*, Okl.Cr., 519 P.2d 517 (1974); *Lovelady v. State*, Okl.Cr., 478 P.2d 983 (1970), and *Jones v. State*, supra.

It is obvious from the record that in the instant case, as in *Jones*, the court refused a requested reading on the ground that the testimony taken out of context could give too much stress to a particular point. Considering the brevity of the trial, the small number of witnesses and the adequacy of the instructions, we find nothing to indicate the court abused its discretion in this regard.

■ For his third assignment of error the defendant alleges that the trial court's communication to the jury and the submission of an additional instruction had the effect of coercing the jury into a verdict of guilty.

In the transcript, at pages 38 through 41, it appears that after retiring to deliberate the jury was brought down again, at which time the court attempted to ascertain if they were deadlocked. At pages 38 and 39, the following appears:

"THE COURT: And for the record, let me inquire of you—I don't want to know, of course, how you stand in regard to guilt or innocence. I simply want to know numerically how the jury stands?

"THE FOREMAN: The numerical?

"THE COURT: Yes.

"THE FOREMAN: It is 11 to 1.

"THE COURT: Eleven to 1. That is, of course, as close as you can get to a verdict without having one. Let me inquire of you, Mr. Dunn, whether you think that you might reach a verdict with further deliberations?"

After the court determined by a show of hands that some of the jurors desired to go back for further deliberation, there then occurred a conversation between the court and the jurors concerning parking lot problems and the need to notify relatives of the jurors' lateness. Finally, before the court returned the jury for further deliberation, the following instruction was given:

"MEMBERS OF THE JURY: You retired to the jury room to consider this case at approximately 4:07 P.M. It is now 5:28 P.M. and you report to me that you are experiencing difficulty in arriving at a verdict.

"Since the trial of this case means a great deal to the parties and has been at no little expense, the Court urges you to make every reasonable effort to arrive at a verdict if possible. You may consider that this case must at some time be decided and that you were selected in the same manner and from the same source from which any future jury must be selected.

"While in the jury room, consult with one another and deliberate with a view of reaching an agreement, if you can do so without disturbing your individual judgment. Each of you must decide this case for yourself, but you should do so only after a discussion and consideration of the case with your fellow jurors. Do not hesitate to change an opinion when convinced that it is wrong. However, you should not surrender your honest convictions concerning the weight of the evidence in order to be congenial or to reach a verdict solely because of the opinion of the other jurors.

"There is no reason to suppose that the case will ever be submitted to twelve individuals more intelligent, more impartial and more competent to decide it or that some other evidence will be produced on one side or the other. With this view,

it is your duty to decide the case, if you can conscientiously do so.

"You will again retire and make a reasonable effort to agree upon a verdict."

First, we must note that the record fails to indicate that the defendant, at any time, objected to this instruction, either orally or in writing; nor did the defendant suggest or submit his own Instruction. Secondly, we find nothing in this additional Instruction which would in any way tend to coerce or force the jury to return a verdict of guilty. In the recent case of *Gatlin v. State*, Okl.Cr., 553 P.2d 204 (1976), we stated:

"In *Reed v. State*, Okl.Cr., 335 P.2d 932, this Court held that it is not improper for a trial judge, after a jury has been deliberating for some time, to call them into court to ascertain whether there is a reasonable probability of reaching a verdict so long as the trial judge exercises great caution to say nothing to coerce an agreement or to indicate his feelings in the case. See also *Calhoun v. State*, Okl.Cr., 406 P.2d 701. In the instant case the trial judge in no way intimated his personal opinion and did not attempt to coerce the jury."

In accordance with the authorities cited above, we find nothing in the record which would indicate that the defendant's rights were prejudiced by the actions of the trial judge when he gave an additional Instruction to the jury.

The defendant's fourth assignment of error concerning the sufficiency of the evidence pertaining to the corroboration of an accomplice, is a reiteration of his first assignment of error. Since we have previously stated our opinion in that regard, it is unnecessary to repeat the same.

Finding no error which would require either reversal or modification, the judgment and sentence appealed from is accordingly AFFIRMED.

BLISS and BRETT, JJ., concur.